UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARITZA PRINCE, individually and on behalf of all persons similarly situated,<br><br>                                        Plaintiff,<br><br><br><br>                    -against-<br><br><br><br>JASON D. BOROFF & ASSOCIATES, PLLC; PROCESS SERVER PLUS, INC.; ENRIQUE DIAZ; and EMMANUEL LANZOT,<br><br>                                        Defendants. | **No. 24 Civ. 2706**<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## PRELIMINARY STATEMENT

1.      Plaintiff Maritza Prince brings this action on behalf of herself and hundreds of other low-income tenants in the Bronx to challenge Defendants' practice of bringing unlawful eviction lawsuits designed to displace them from their affordable apartments and wrongfully extract from them many thousands of dollars.

2.      Specifically, Bronx landlords hire Defendant Jason D. Boroff & Associates, PLLC (the "Boroff Firm") to sue these tenants for eviction. The Boroff Firm, in turn, hires Process Server Plus, Inc. ("Process Server Plus") and two of its individual process servers, Enrique Diaz and Emmanuel Lanzot, to effectuate service of process. But rather than lawfully notify residents of the suits, these process servers systematically lie, implausibly asserting that virtually every time they went to a tenant's apartment to serve process, there was simply nobody home. As a result, tenants are deprived proper notice of the lawsuits.

3.     Ms. Prince is a seventy-four year old Bronx resident whose life has been upended by these practices. She has lived in the same apartment, receiving a Section 8 subsidy to pay her rent, for more than thirty years. But in the eviction lawsuit they filed against her, Defendants failed to lawfully serve her with process; filed a false affidavit of service; and proceeded to litigate against her. If successful, that suit would extract from Ms. Prince more than *$36,000* and evict her and her family from their home of decades. Ms. Prince is not alone. She and hundreds of other residents of the Bronx have been systemically harmed by the actions of these Defendants. These individuals are overwhelmingly Black and Latinx, and they disproportionately struggle to meet their daily expenses, making them more easily victimized by Defendants' conduct. Amidst New York City's affordable housing crisis, the inevitable consequence of Defendants' actions, if they continue, is to push these tenants into the City's overburdened shelter system, derailing their lives in the process.

4.     Meanwhile, Defendants enrich themselves at the expense of these tenants. Boroff, Process Server Plus, Diaz, and Lanzot all get paid for the work they do, profiting from these efforts to displace and impoverish tenants who are already struggling.

5.     Defendants' practices violate the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. (the FDCPA), which prohibits unfair, deceptive, and abusive debt collection practices; New York General Business Law § 349, which prohibits "deceptive acts or practices in the conduct of any business, trade or commerce"; N.Y.C. Admin. Code § 20-409.2, which provides a cause of action for "[a]ny person injured by the failure of a process server to act in accordance with the laws and rules governing service of process in New York state"; and constitutes common law negligence. Ms. Prince seeks redress for these violations on behalf of herself and other Bronx tenants.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C.

§ 1331 and 15 U.S.C. § 1692k(d), and supplemental jurisdiction over the state and city law

claims pursuant to 28 U.S.C. § 1367(a).  Declaratory relief is available pursuant to 28 U.S.C.

§§ 2201(a) and 2202.

7.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C.

§ 1391 because it is the district where Defendant the Boroff Firm resides, and it is the district in

which a substantial part of the events giving rise to Plaintiff's claims occurred, as it is the district

in which Defendants filed and litigated actions against Plaintiff and Class Members.

## PARTIES

8.      Plaintiff Maritza Prince is a natural person residing in the Bronx, New York.

9.      Plaintiff is a "consumer" as that term is defined by the FDCPA, 15 U.S.C.

§ 1692a(3), in that Plaintiff was alleged to owe a debt stemming from residential rent. *Romea v.*

*Heiberger & Assocs.*, 163 F.3d 111, 116 (2d Cir. 1998) ("[U]nder the FDCPA, back rent is

debt.").

10.      Defendant Jason D. Boroff & Associates, PLLC (the "Boroff Firm") is a domestic

professional service limited liability company organized under the laws of the State of New York

with its principal place of business located at 349 East 149th Street, Suite 703, Bronx, New York

10451.

11.      Defendant Process Server Plus, Inc. ("Process Server Plus") is a corporation

organized under the laws of the State of New York with its principal place of business located at

96-11 101st Avenue, Suite 2, Ozone Park, New York 11416. Process Server Plus is registered as

a process serving agency with the New York City Department of Consumer and Worker

Protection ("DCWP," formerly known as the New York City Department of Consumer Affairs), with license number 1077004-DCA.

12.     Defendant Enrique Diaz ("Diaz") is a natural person. He is registered as an individual process server with DCWP, with license number 2017524-DCA. Diaz serves process for Process Server Plus.

13.     On information and belief, at all times described herein, Diaz was an employee or independent contractor of Process Server Plus and acted on behalf of Process Server Plus.

14.     Defendant Emmanuel Lanzot ("Lanzot") is a natural person. He was previously registered as an individual process server with DCWP, with license number 1258345-DCA. Lanzot is now registered as an individual process server with DCWP, with license number 2117200-DCWP. Lanzot serves process for Process Server Plus.

15.     On information and belief, at all times described herein, Lanzot was an employee or independent contractor of Process Server Plus and acted on behalf of Process Server Plus.

16.     Defendants the Boroff Firm, Process Server Plus, Diaz, and Lanzot are all "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6), in that Defendants regularly use the instrumentalities of interstate commerce or the mails in their businesses, the principal purpose of which is the collection of debts, and Defendants regularly collect consumer debts due or owed to another.

17.     Although the FDCPA's definition of "debt collector" exempts process servers "while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt," 15 U.S.C. § 1692a(6)(D), this exemption does not apply to any process server who *fails* to serve process. *See, e.g.*, *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 423 (S.D.N.Y. 2010).

## STATUTORY AND REGULATORY BACKGROUND

18.     The New York Real Property Actions and Proceedings Law and Real Property Law govern requirements for eviction lawsuits in New York State.

19.     Before commencing an eviction lawsuit, a landlord must serve a notice ("Predicate Notice") that informs the tenant that the landlord will commence an eviction lawsuit unless certain steps are taken within a particular time period.[1]

20.     After the Predicate Notice has been lawfully served and the time period provided by the Predicate Notice has expired, the landlord must serve an eviction petition ("Eviction Petition") on the tenant before commencing an eviction proceeding. N.Y. R.P.A.P.L. § 735.

21.     To commence an eviction proceeding, the landlord must file the Eviction Petition, a copy of the Predicate Notice, an Affidavit of Service attesting to service of the Eviction Petition, and an Affidavit of Service attesting to service of the Predicate Notice with the Housing Court within three days of service of the Eviction Petition. N.Y. R.P.A.P.L. § 735(2).

22.     In addition to seeking a judgment for possession of the apartment, Eviction Petitions often seek a money judgment for rent due. N.Y. R.P.A.P.L. § 741(5).

23.     If a tenant fails to appear or submit an answer, the landlord may file an application for a default judgment. N.Y. C.P.L.R. § 3215(a).

24.     Landlords who obtain judgments against tenants may execute on them by obtaining warrants of eviction. N.Y. R.P.A.P.L. § 749(1), (3).

---

[1] The Predicate Notice that must be served depends on the nature of the eviction proceeding. In an eviction based on non-payment of rent, a landlord must serve "a written demand of the rent" on the tenant "with at least fourteen days' notice requiring, in the alternative, the payment of the rent, or the possession of the premises." N.Y. R.P.A.P.L. § 711(2). The Federal CARES Act extends the time period from fourteen to thirty days. 15 U.S.C. § 9058(c)(1). In an eviction based on termination of a lease at the end of the lease term, a landlord must serve written notice stating that it wishes to terminate the tenancy, with thirty, sixty, or ninety days' notice to the tenant, depending on the length of the tenant's lease and occupancy of the apartment. N.Y. R.P.L. §§ 226-c, 232-a.

25.     Landlords who obtain money judgments against tenants may execute on them by garnishing the tenants' wages or levying their bank accounts, with no judicial approval required, for at least the next *twenty years*. N.Y. C.P.L.R. §§ 211(b), 5231, 5232.

26.     Predicate Notices and Eviction Petitions must be served on tenants through one of three lawful methods: (1) personal service; (2) substitute service; or (3) conspicuous service. N.Y. R.P.A.P.L. §§ 711(2), 713, 735(1)(a); N.Y. R.P.L. § 232-a.

27.     Personal service means personal delivery of the Predicate Notice or Eviction Petition directly to the tenant. N.Y. R.P.A.P.L. § 735(1)(a).

28.     Substitute service means personal delivery of the Predicate Notice or Eviction Petition to a person of suitable age and discretion who resides in the subject apartment. N.Y. R.P.A.P.L. § 735(1). Within one day, the Predicate Notice or Eviction Petition must also be mailed to the tenant both by registered or certified mail and by regular first-class mail. *Id.*

29.     Conspicuous service means "affixing a copy . . . upon a conspicuous part of the property sought to be recovered or placing a copy under the entrance door of such premises." Within one day, the Predicate Notice or Eviction Petition must also be mailed to the tenant both by registered or certified mail and by regular first-class mail. N.Y. R.P.A.P.L. § 735(1).

30.     Conspicuous service is legally permitted only "if upon reasonable application" by the process server, admittance to the subject apartment "cannot be obtained" and a person to deliver the papers via personal or substitute service cannot be "found." N.Y. R.P.A.P.L. § 735(1). "Reasonable application" means that a process server must make at least two attempts at personal or substitute service that have at least a reasonable expectation of success.

31.     A New York court lacks personal jurisdiction over any individual who was not lawfully served with process, and such an individual may move to dismiss an action, or vacate a judgment, on this basis. *See* N.Y. C.P.L.R. §§ 3211(a)(8), 5015(a)(4).

32.     An individual's actual knowledge of a lawsuit does not obviate the requirement that service of process be made in accordance with the statutory requirements.

33.     All New York City process servers and process serving agencies must be licensed by DCWP and must follow rules and regulations issued by the City. N.Y.C. Admin. Code § 20-403 *et seq*.

34.     All New York City process serving agencies must "be legally responsible for any failure to act in accordance with the laws and rules governing service of process by each process server to whom it has distributed, assigned or delivered process for service." N.Y.C. Admin. Code § 20-406.2(b).

## FACTUAL ALLEGATIONS

35.     The Boroff Firm, on behalf of various landlords in the Bronx, files eviction lawsuits ("Eviction Lawsuits") against Class Members seeking both to evict tenants and also to obtain money judgments against them.

36.     In each Eviction Lawsuit, the Boroff Firm prepares and files an Eviction Petition.

37.     In each Eviction Petition, an attorney from the Boroff Firm "affirm[s] under penalty of perjury" that "he has read the" petition and that the allegations in the petition are true to "his own knowledge" or "statements and/or records provided by [the landlord] . . . contained in the file in the Attorney's office."

38.     The Eviction Petitions falsely state that Class Members owe the full purported monthly rent for each month because they do not credit any payments made by Class Members during the time period their arrears purportedly accrued.

39.     As a result of failing to credit Class Members' payments, the Eviction Petitions falsely overstate the *total* amount of debt owed by Class Members, often by many thousands of dollars.

40.     The Eviction Petitions are also misleading, in that they convey to a judge that the Class Members have not made *any* payments at all for many months when, in reality, they did continue to make rent payments, including payments earmarked for those specific months of rent.

41.     Each Eviction Petition names as respondents tenants who are not the primary tenants of the apartment (individuals sometimes called "undertenants").[2] Each Eviction Petition requests a "final judgment against respondents(s) [sic] for the rent demanded therein," and states that the total amount sought in the Petition is "due to landlord from respondent tenant(s)."

42.     These statements constitute a threat to take an action that cannot lawfully be taken as to the undertenants because no money judgment can lawfully be sought against them. *See* N.Y. R.P.A.P.L. § 702.

43.     Some Eviction Petitions seek to collect additional fees, such as air conditioner charges or refrigerator charges. Those Eviction Petitions threaten to take an action that cannot lawfully be taken because such charges cannot lawfully be sought through a lawsuit seeking eviction.

---

[2] In this Complaint, the term "tenant" includes individuals who may be referred to as "undertenants"; that is, the term "tenant" includes all individuals who reside in the subject apartments, regardless of whether or not they are considered to be the primary tenant.

44. Like the Eviction Petitions, the Predicate Notices are false and misleading, and threaten to take actions that cannot lawfully be taken, in that they:

- Fail to credit Class Members' payments and state that Class Members owe the full market rent for each month even when the tenant made a payment for that month;

- Threaten to bring a lawsuit to collect a money judgment against "undertenants" against whom it is unlawful to seek such money judgments; and

- Threaten to bring an eviction lawsuit to collect fees and charges which it is unlawful to seek in an eviction proceeding.

### A. Diaz and Lanzot Do Not Lawfully Serve Process and Systematically Falsify Affidavits of Service

45. The Boroff Firm hires Process Server Plus to serve the Predicate Notices and Eviction Petitions filed by Bronx landlords against Class Members and, in turn, Process Server Plus hires Diaz and Lanzot as the process servers for those Notices and Petitions.

46. Diaz and Lanzot do not lawfully serve Class Members with the Predicate Notices and Eviction Petitions.

47. Diaz and Lanzot purport to effectuate service against Class Members through conspicuous service under N.Y. R.P.A.P.L. § 735(1)(a), claiming that they affix a copy of each Predicate Notice or Eviction Petition to the door of the apartment after having made one prior attempt to effectuate service, and claiming that they also have mailed a copy of each Predicate Notice or Eviction Petition.

48. On information and belief, Diaz and Lanzot do not make any effort to serve Class Members; instead, they prepare and swear to affidavits of service in which they falsely claim to have attempted and completed service.

49.    Diaz or Lanzot prepares one affidavit of service of the Predicate Notice and one affidavit of service of the Eviction Petition as to each Class Member. Diaz and Lanzot each sign the affidavits under penalty of perjury.

50.    Diaz and Lanzot each prepare these affidavits using a standard form template.

51.    These affidavits contain false statements.

52.    First, in affidavits of service filed against Class Members, Diaz and Lanzot each swear that they were "unable to serve" the tenants "by personal delivery."

53.    This statement is false. On information and belief, Diaz and Lanzot do not make any effort to serve Class Members personally.

54.    Second, in affidavits of service filed against Class Members, Diaz and Lanzot each swear that they were "unable to find a person of suitable age and discretion" at the time of purported conspicuous service.

55.    This statement is false. On information and belief, Diaz and Lanzot do not make any effort to find a person of suitable age and discretion to serve with the Predicate Notice or Eviction Petition.

56.    Third, in affidavits of service filed against Class Members, Diaz and Lanzot each swear that they were "unable to find a person of suitable age and discretion . . . during a prior attempt made" at a specified date and time.

57.    This statement is false. On information and belief, Diaz and Lanzot did not make any prior effort to find a person of suitable age and discretion to serve with the Predicate Notice or Eviction Petition.

58.     In affidavits of service filed against Class Members, Diaz and Lanzot each swear that they affixed to the apartment door a copy of the Predicate Notice or Eviction Petition for "each" tenant in the household.

59.     This statement is false. On information and belief, Diaz and Lanzot do not post a copy for each tenant in the household.

60.     The New York State Courts Electronic Filing system displays 200 Eviction Lawsuits filed in Bronx Housing Court between January and July 2023 by the Boroff Firm. The files for these 200 cases contain 400 affidavits of service signed by Diaz (290 affidavits) or Lanzot (110 affidavits) on behalf of Process Server Plus (the "Reviewed Affidavits").

61.     In 361 out of 400 (90%) of the Reviewed Affidavits, Diaz and Lanzot claimed to have effectuated service through conspicuous service. Of the remainder, 39 (10%) of the Reviewed Affidavits claimed to make substitute service (handing the papers to an adult in the apartment other than the tenant) and zero (0%) claimed to make personal service (handing the papers directly to the tenant).

62.     Each Reviewed Affidavit purporting to have made conspicuous service lists the time and date of a purported attempted service prior to the instance of conspicuous service. Thus, the 400 Reviewed Affidavits show a total of 761 purported instances of either attempted or completed service (comprising 361 instances of conspicuous service, 361 instances of attempts prior to conspicuous service, and 39 instances of substitute service).

63.     The Reviewed Affidavits show that out of the total 761 times Diaz or Lanzot purported to have attempted to effectuate service, there were 722 times (95%) that they purported not to be able to serve the papers by personal or substitute service despite making an effort to do so.

64.     For these affidavits of service to be true, it would mean that virtually every one of the hundreds of times that Diaz and Lanzot tried to effectuate service, no one answered the door (95% of cases). This is particularly unlikely given that most Eviction Petitions list multiple tenants in each apartment, indicating that most apartments have multiple adults living there. In other words, for these affidavits of service to be true, it would mean that hundreds of adults were virtually never in their own homes.

65.     Legitimate process servers effectuate service through personal service up to half of the time—because people often answer the door at their own homes. *See, e.g.*, Decl. of Bruce Lazarus, *Sykes v. Mel S. Harris & Assocs. et al.*, No. 09 Civ. 8486(DC) (S.D.N.Y), ECF No. 103.

66.     Lawfully serving process at a residence takes significant time, often up to half an hour. To attempt or effectuate conspicuous service, the process server must walk or drive to the address; if driving, find parking and get out of their car; gather the correct papers; gain access to the apartment building; walk to and find the correct apartment; ring the doorbell or buzzer, or knock; wait a reasonable amount of time for someone to answer the door and, if completing service, post the papers on the door; record their efforts; and leave the building.

67.     Even lawfully serving process on multiple apartments within the same building takes significant time. After completing service at one apartment, the process server must walk to and find the correct apartment for the next service, often including walking up or down stairs or waiting for and riding an elevator; ring the doorbell or buzzer, or knock; wait a reasonable amount of time for someone to answer the door; post the papers on the door; and record their efforts.

68.     In many cases, the affidavits of service sworn by Diaz and Lanzot demonstrate impossibly short lengths of time between purported instances of attempted or completed service.

69.    The Reviewed Affidavits show 175 instances in which Diaz or Lanzot swore to have attempted or completed service three minutes or less after a different purported attempted or completed service.

70.    For example, on April 29, 2023, a Saturday, Diaz purported to attempt service at 21 apartments at 5 different building addresses in just over an hour, between 6:02pm and 7:09pm. All but three of these purported attempts were three minutes or fewer before and/or after a different purported service attempt. For example, Diaz purported to attempt service at 6:11pm, 6:13pm, 6:15pm, 6:18pm, and 6:21pm. Diaz swore that he found no one home at any of these attempts.

71.    Two days later, on Monday, May 1, 2023, Diaz purported to effectuate conspicuous service at the same 21 apartments in just over an hour, between 9:16am and 10:28am. All but four of these purported services were three minutes or fewer before and/or after a different purported service. For example, Diaz purported to effectuate conspicuous service at 10:14am, 10:16am, 10:18am, 10:20am, 10:23am, 10:25am, and 10:28am. Diaz swore that he— once again—found no one home at any of these purported services.

72.    For Diaz's sworn statements to be true, it would mean not only that the times between service attempts was plausible, but also that *none* of the 44 tenants named in these 21 Eviction Petitions—and none of their friends or family—were home at their apartments *either* on Saturday evening *or* on Monday morning.

73.    As another example, on Saturday, March 18, 2023, Lanzot purported to attempt service at eight apartments at two different addresses in just nineteen minutes, between 6:52pm and 7:11pm. Most of these attempts were two minutes or fewer before and/or after a different

purported service attempt. For example, Lanzot purported to attempt service at 6:52pm, 6:53pm, and 6:54pm. Lanzot swore that he found no one home at any of these attempts.

74.     Two days later, on Monday, March 20, 2023, Lanzot purported to effectuate conspicuous service at the same 8 apartments in just eighteen minutes, between 10:24am and 10:42am. All but one of these purported services were two minutes or fewer apart. For example, Lanzot purported to effectuate conspicuous service at 10:24am, 10:26am, 10:28am, 10:30am, and 10:32am. Lanzot swore that he found no one home at any of these purported services.

75.     For Lanzot's sworn statements to be true, it would mean not only that the times between service attempts were plausible, but also that *none* of the 10 tenants named in these eight Eviction Petitions—and none of their friends or family—were home at their apartments *either* on Saturday evening *or* on Monday morning.

76.     On information and belief, Diaz and Lanzot falsify affidavits of service by quickly running through apartment buildings and posting papers on the apartment doors, without making any effort to serve the papers through personal or substitute service.

77.     Alternatively, on information and belief, Diaz and Lanzot do not even attempt to post the papers at all.

78.     Multiple judges have found that Diaz and Lanzot have failed to lawfully serve tenants or consumers. For example:

- In December 2018, in *Ryer 2180 v. Cardona*, CV-015055-17/BX, Judge Lyle E. Frank Jr. of the New York City Civil Court, Bronx County found that Diaz's "process server's records do not comply with either General Business Law § 89-cc or the Rules of the City [of] New York 2-233 (b)(1)" and that "Mr. Diaz's testimony [purporting conspicuous service] was not credible."

- In April 2019, in *Shllaku Holdings v. Peralta*, CV-001419-15/BX, Judge Brenda Rivera of the New York City Civil Court, Bronx County, after reviewing Diaz's logbook entries, found that service "was not proper" and noted that Diaz purporting to serve two

individuals four minutes apart was "incredible," in addition to the affidavit of service listing the "wrong skin color and age for Defendant Peralta."

• In February 2019, in *3694 Broadway Associates, LLC v. Layens*, CV-023519-17/NY, Judge Dakota D. Ramseur of the New York City Civil Court, New York County found that Lanzot's service was improper because there were "too many inconsistencies in Lanzot's testimony" and "the markings in Lanzot's logbook are implausible."

• In February 2021, in *2437 Valentine Associates, LLC v. Valverde*, CV-004439-16/BX, Judge Fidel E. Gomez of the New York City Civil Court, Bronx County found that Lanzot's service was "improper" and noted that Lanzot purporting to serve two individuals 3 miles apart in only seven or eight minutes was "simply incredible, hard to fathom, and casts serious doubt as to whether Lanzot was testifying credibly."

79.    In a number of additional cases, state court judges have ordered evidentiary hearings after consumers made prima facie challenges to Lanzot's purported service on behalf of Process Server Plus and the Boroff Firm.

80.    Diaz, Lanzot, and Process Server Plus have all faced discipline by DCWP for violating rules regulating service of process.

81.    In 2014, Lanzot entered into a consent order with DCWP, and paid a fine, to settle charges that he violated rules governing process servers.

82.    In 2020, Diaz entered into a consent order with DCWP, and paid a fine, to settle charges that he violated rules governing process servers.

83.    In 2020, Process Server Plus entered a consent order with DCWP, and paid a fine, to settle charges that it violated rules governing process serving agencies.

84.    In March 2022, DWCP denied Emmanuel Lanzot's process server license renewal application because Lanzot violated Title 6 of the Rules of the City of New York (6 RCNY) § 2-234 by signing a false affidavit; giving false testimony in court; and engaging in "sewer service."

85.    In March 2023, New York Supreme Court denied Lanzot's petition to overturn DWCP's decision to not renew his process server license, finding that "DCWP's determination not to renew [Lanzot's] application based upon a finding that [Lanzot] signed a false affidavit,

gave false testimony in court, and engaged in 'sewer service' was amply supported by the evidence and not arbitrary or capricious."

86. Diaz and Lanzot provide all completed affidavits of service in the Eviction Lawsuits to Process Server Plus.

87. Thomas Dundas, on behalf of Process Server Plus, notarizes all of these affidavits of service.

88. Thomas Dundas is the principal of Process Server Plus.

89. On information and belief, Process Server Plus reviews or should review all of these affidavits of service.

90. Process Server Plus knows, or should know, that Diaz and Lanzot have falsely attested to service of process in these affidavits of service.

91. The Boroff Firm files the false affidavits of service in the Eviction Lawsuits.

92. The Boroff Firm reviews or should review all of these affidavits of service.

93. A meaningful review of the affidavits of service would compel the conclusion that the affidavits are facially implausible because, as described above, virtually all the affidavits of service purport to make conspicuous service, and many purport to make conspicuous service in a time period that is physically impossible or implausible.

94. On information and belief, no attorney at the Boroff Firm meaningfully reviews the affidavits of service, or, in the alternative, an attorney at the Boroff Firm does meaningfully review the affidavits of service and files them despite the affidavits being facially implausible.

95. The Boroff Firm knows, or should know, that Diaz and Lanzot have falsely attested to service of process in these affidavits of service.

96.    Process Server Plus was aware or should have been aware of each traverse hearing ordered against Diaz or Lanzot, as Process Server Plus reported them or should have reported them to DCWP.

97.    On information and belief, because Class Members have not been lawfully served with Predicate Notices and Eviction Petitions, some Class Members do not timely learn that they are alleged to owe back rent or that Eviction Lawsuits have been filed against them.

98.    On information and belief, some Class Members become aware of the Eviction Lawsuits not through lawful service of process, but in some other way.

99.    Many Class Members do not appear in court in the Eviction Lawsuits. On information and belief, these Class Members fail to appear in court as a direct result of Defendants' sewer service. Some Class Members have default judgments entered against them.

**B. Defendants' Actions Harm Class Members While Defendants Enrich Themselves**

100.    Defendants' actions cause serious harm to Class Members in multiple ways.

101.    Diaz and Lanzot, on behalf of Process Server Plus and, in turn, the Boroff Firm, harm Class Members by failing to lawfully serve Class Members and by making false statements regarding service, putting them at risk of eviction and displacement, and of collection of rent that they do not owe. Diaz and Lanzot's conduct also deprives Class Members of the opportunity to address any purported rent owed or other legal issues prior to an Eviction Lawsuit being commenced and deprives them of the opportunity to defend the Eviction Lawsuit.

102.    Diaz and Lanzot, on behalf of Process Server Plus and, in turn, the Boroff Firm, harm Class Members by failing to lawfully serve Class Members and instead leaving all Predicate Notices and Eviction Petitions on Class Members' apartment doors. This conduct harms Class Members because it has the effect of alerting other tenants that the Class Members

are behind on rent and/or face potential eviction, leading to public embarrassment and fear of losing their home.

103.    The Boroff Firm, on behalf of Bronx landlords, harms Class Members by in fact evicting them, obtaining and collecting on settlements entered by some Class Members, and obtaining and collecting on money judgments against other Class Members.

104.    Some tenants against whom Defendants brought eviction proceedings have had warrants of eviction issued against them.

105.    In the aggregate, Defendants' conduct has the potential to result in widespread eviction and displacement of Class Members, the majority of whom are Latinx or Black. Because New York City lacks adequate affordable housing, Defendants' conduct is likely to leave many Class Members homeless and force them into the City's overburdened shelter system.

106.    On information and belief, some Class Members who are not lawfully served never find out about the Eviction Lawsuits. Some Class Members have had default judgments entered against them. Other Class Members do appear in court but are *pro se*, so they are unable to successfully challenge unlawful service and thus are forced to pay rent they do not owe or be evicted.

107.    Judgments entered against Class Members can lead to Class Members being deprived of their funds (temporarily or permanently) when Defendants execute on the judgments or persuade Class Members to make payments on the judgments. Judgments entered against Class Members can also affect Class Members' ability to obtain credit and make it more difficult for them to find alternative housing.

108.    Many Class Members agree to settle the Eviction Lawsuits even when they have strong defenses. For example, Class Members may agree voluntarily to move out because the

proceedings are stressful and they do not have sufficient funds to pay the amounts sought. Class Members who settle the Eviction Lawsuits by agreeing to move out are effectively abandoning what may be their only meaningful access to sustainable affordable housing.

109. Class Members who settle the Eviction Lawsuits may rely on loans to pay the settlement amount, thus burdening them with debt.

110. Settlements entered by Class Members can lead to Class Members being deprived of their funds (temporarily or permanently) when they make payments to satisfy the settlements.

111. Class Members who appear in court to defend the Eviction Lawsuits are harmed independent of whether the proceedings end in settlement or judgment or are dismissed. Harms to these Class Members include, but are not limited to: time and money spent to appear in court, including lost wages due to missed work, postage, photocopying, transportation, and childcare; emotional distress; and money paid out of pocket to satisfy judgments or settlement agreements.

112. Defendants' actions also risk harming the public fisc. For example, New York City operates a program that provides grants colloquially known as "One-Shot Deals," by which certain low-income tenants who face eviction obtain public funds to pay debts owed to their landlords and restore their tenancy. To the extent that Class Members obtain "One-Shot Deals" to satisfy Defendants' improper lawsuits, public New York City tax dollars are wrongfully being paid.

113. Defendants' actions are ongoing and will cause further harm to Class Members absent Court intervention.

114. Meanwhile, Defendants profit from their unlawful actions.

115. The Boroff Firm benefits by being compensated by Bronx landlords for filing and litigating the Eviction Lawsuits.

116.    To the extent that tenants are not properly notified of the Eviction Lawsuits and do not appear in court, the Boroff Firm further benefits because its litigation costs are limited.

117.    On information and belief, Diaz, Lanzot, and Process Server Plus are paid a flat fee for each case in which service is purportedly made.

118.    By failing to actually serve Class Members, but claiming to have done so, Diaz, Lanzot, and Process Server Plus are paid for a number of cases that exceeds the number of cases in which they could lawfully serve process, thereby increasing their own profits.

**FACTS CONCERNING NAMED PLAINTIFF**

119.    Plaintiff Maritza Prince, a U.S. citizen born in the Dominican Republic, is a seventy-four year old Latina monolingual Spanish speaker. Ms. Prince resides in her apartment in the Bronx with her family, including her son, granddaughter, and other relatives.

120.    Ms. Prince lives on a fixed income of Supplemental Security Income, which is available only to individuals who are elderly, disabled, or both; have very low income; and have assets of less than approximately $2,000.

121.    Ms. Prince receives a Section 8 subsidy to pay her rent.

122.    Ms. Prince has lived in her apartment for more than thirty years. During that period, she has reliably paid rent and recertified her income and household composition each year to maintain her Section 8 subsidy.

123.    Since her last successful lease renewal in 2021, Ms. Prince has continued to pay her subsidized rent of $494 each month.

124.    On December 14, 2022, the Boroff Firm prepared a Predicate Notice stating that Ms. Prince and her son and granddaughter were "justly indebted" for a total amount of $30,630.

The Predicate Notice stated that Ms. Prince was required to pay that amount in thirty days or be sued in an eviction lawsuit.

125.    On April 11, 2023, the Boroff Firm filed an Eviction Lawsuit against Ms. Prince and her son and granddaughter, captioned *Boston Tremont Housing Development Fund Corporation v. Prince*, *et. al.*, No. LT-316381-23/BX in Bronx County Housing Court, seeking $36,724 in unpaid rent and a judgment of eviction.

126.    The Eviction Petition unlawfully seeks to collect rent from Ms. Prince that she does not owe.

127.    The Eviction Petition falsely states that Ms. Prince owes the full purported monthly rent for each month because it does not credit any payments Ms. Prince made during the time period her arrears purportedly accrued.

128.    For example, the Eviction Petition falsely states that she owes "$2690.00" for "Oct 22." But Ms. Prince paid her $494 subsidized portion of the rent in October 2022, earmarking her check for that month as "Rent Oct." Thus, the maximum she could owe for this month is $2,690 less her $494 payment.

129.    The Eviction Petition names Ms. Prince's son and granddaughter as "Respondents (Undertenants)." The Eviction Petition requests a "final judgment against respondents(s) [sic] for the rent demanded therein," in the amount of $36,724. These statements constitute a threat to take an action that cannot lawfully be taken as to Ms. Prince's son and granddaughter because no money judgment can lawfully be sought against them.

130.    The Predicate Notice filed as part of the Eviction Lawsuit against Ms. Prince is likewise false and misleading, in that it:

- Falsely states that Ms. Prince owes the full market rent for each month because it fails to credit Ms. Prince's payments for that month; and

- Threatens to bring a lawsuit to collect a money judgment against Ms. Prince's son and granddaughter, against whom it is unlawful to seek such money judgments.

131.    In an affidavit of service that the Boroff Firm filed with the Eviction Petition, Enrique Diaz swore that he served Ms. Prince, her son, and her granddaughter with the Predicate Notice on January 17, 2023 at 10:11a.m., by affixing a copy of the Predicate Notice to her door and mailing the Predicate Notice to the same address; that he had previously attempted to serve them with the Predicate Notice on January 14, 2023 at 6:37p.m; that he was "unable to serve" Ms. Prince or her son or granddaughter by personal delivery on either occasion; and that he was "unable to find a person of suitable age and discretion" on either occasion.

132.    In an affidavit of service that the Boroff Firm filed with the Eviction Petition, Enrique Diaz swore that he served Ms. Prince, her son, and her granddaughter with the Eviction Petition on May 16, 2023 at 10:09a.m., by affixing a copy of the Eviction Petition to her door and mailing it to the same address; that he had previously attempted to serve them with the Eviction Petition on May 15, 2023 at 6:41p.m; that he was "unable to serve" Ms. Prince or her son or granddaughter by personal delivery on either occasion; and that he was "unable to find a person of suitable age and discretion" on either occasion.

133.    These statements in both affidavits were false. Ms. Prince and/or one of her relatives are regularly at home on each of the days and times listed in the affidavits of service, and one of them would have been home at least one of those days and times. No one knocked or rang her doorbell at any of those times. Neither the Predicate Notice nor the Eviction Petition were left on Ms. Prince's door at any time.

134.    On information and belief, Diaz did not make any effort to serve Ms. Prince or her family members with the Predicate Notice or Eviction Petition either personally or by finding a person of suitable age and discretion.

135.    Because she was not lawfully served with the Eviction Petition, Ms. Prince did not initially know that the Eviction Lawsuit had been filed against her.

136.    Ms. Prince, her son, and her granddaughter eventually each received a copy of the Eviction Petition through the mail.

137.    On May 24, 2023, Ms. Prince traveled to Bronx Housing Court to file a *pro se* Answer. Because she is a monolingual Spanish speaker, she brought her daughter to aid in translation, as well as her son and granddaughter who were named in the Eviction Petition. A Bronx Housing Court clerk provided Ms. Prince an answer form that stated a "general denial" of the allegations, and directed Ms. Prince to sign it. Ms. Prince and her daughter said they wanted to check additional boxes, including the box challenging service of the Predicate Notice and Eviction Petition, but the clerk said that they were not allowed to do so.

138.    Ms. Prince subsequently retained the New York Legal Assistance Group ("NYLAG"), a nonprofit legal services organization that provides free legal services to individuals with low incomes, to represent her in the Eviction Lawsuit.

139.    On August 31, 2023, Ms. Prince, through her attorney, moved to dismiss the Eviction Lawsuit, on the basis that, among other things, Ms. Prince was not lawfully served; that her landlord had not credited any of her payments; and that her landlord unlawfully sought to collect rent not owed. Ms. Prince filed copies of the checks showing that she had paid $494 in rent every month.

140.    The Boroff Firm, on behalf of her landlord, opposed Ms. Prince's motion, falsely describing Ms. Prince's claims that she was not served as "spurious," "self-serving," and "conclusory."

141.    Ms. Prince and her attorney appeared in court to defend the Eviction Lawsuit on September 5, 2023, October 24, 2023, December 6, 2023, and January 12, 2024. On February 23, 2024, Ms. Prince was ill, so her attorney appeared in court on her behalf. Additional court appearances were held on April 24, 2024, June 24, 2024, and September 10, 2024.

142.    Defendants' actions have caused harm to Ms. Prince. Ms. Prince spent time and money to appear at multiple court dates and meet with her attorney, including but not limited to money for postage, notarization, transportation, and photocopying. Defendants' actions also caused Ms. Prince to experience emotional distress, including considerable stress and anxiety over the prospects that she and her family would lose their long-term home and would not have access to other affordable housing. This stress and anxiety has had negative effects on her health, including decreased appetite and weight loss.

## CLASS ACTION ALLEGATIONS

143.    Plaintiff brings this action, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and as representative of a Class consisting of:

> All individuals who have been or will be sued by the Boroff Firm in New York City Housing Court- Bronx County in lawsuits in which an affidavit of service has been or will be filed, stating that Diaz or Lanzot, on behalf of Process Server Plus, effectuated service of an eviction petition via conspicuous service.

144.    The Class as a whole is so numerous that joinder of all Class Members in this action would be impracticable.

145.    There are at least 330 Class Members.

146.    The precise number and identity of Class Members is contained within Defendants' business and litigation records.

147.    Defendants have acted and continue to act in a similar manner toward each member of the Class, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

148.    Class Members present common questions of law and fact, and these questions predominate over any individual questions.

149.    The common questions of fact include, but are not limited to, whether Defendants prepare and file Eviction Petitions that contain false statements and false affidavits of service; and what review, if any, Process Server Plus and the Boroff Firm perform of the relevant documents.

150.    The common questions of law include, but are not limited to: whether Defendants' statements are false or misleading; whether the Boroff Firm conducts meaningful review; and whether Defendants' collection practices are unfair, deceptive, or misleading in violation of the FDCPA and New York G.B.L. § 349.

151.    Plaintiff's claims are typical of the claims of the Class. Defendants act in the same manner toward Plaintiff and the Class as a whole, including by preparing and filing Affidavits of Service that include the same false and misleading statements.

152.    Plaintiff will adequately and fairly protect the interests of all members of the proposed Class because she has the requisite personal interest in the outcome of this litigation and has no interest antagonistic to any member of the proposed Class.

153.    Plaintiff is represented by NYLAG. Attorneys at NYLAG are experienced in complex federal litigation, class action litigation, and consumer and eviction defense litigation.

154.    The common questions of law and fact predominate in this action.

155.    A class action is the superior method for a fair and efficient adjudication of this matter in that Defendants have acted and continue to act in the same manner toward the Class as a whole and a class action will avoid numerous separate actions by Class Members that would unduly burden the courts and create the possibility of inconsistent decisions.

156.    Moreover, it would be impracticable for Class Members, who are low-income individuals, to obtain legal counsel on an individual basis to bring claims of the type raised in this action. Hence their rights may well be meaningless without certification of a class action seeking common redress.

157.    Final injunctive and declaratory relief and money damages are appropriate as to the Class as a whole.

### FIRST CAUSE OF ACTION
Violation of the FDCPA, 15 U.S.C. §§ 1692d, 1692e, 1692f
Against The Boroff Firm, Process Server Plus, Diaz, and Lanzot
On behalf of Plaintiff and the Class

158.    The FDCPA, 15 U.S.C. § 1692d, prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including the "publication of a list of consumers who allegedly refuse to pay debts."

159.    The FDCPA, 15 U.S.C. § 1692e, prohibits a debt collector from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt."

160.    The FDCPA, 15 U.S.C. § 1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

161.    Defendants violate the FDCPA, §§ 1692d, 1692e, and 1692f, by making false, deceptive, and misleading representations and engaging in harassing and abusive, and unfair and unconscionable practices including, but not limited to:

a. Failing to lawfully effectuate service of process;

b. Preparing and signing false affidavits of service;

c. Filing false affidavits of service;

d. Filing affidavits of service without meaningful attorney review; and

e. Posting Eviction Petitions on apartment doors under circumstances not permitted by law, thereby publicly identifying tenants who allegedly refuse to pay debt.

162.    Defendants' wrongful and deceptive acts have caused and continue to cause injury and damages to Plaintiff and Class Members and, unless enjoined, will cause further injury.

163.    As a direct and proximate result of Defendants' violations, Plaintiff and Class Members have suffered and continue to suffer compensable harm and are entitled to recover actual and statutory damages, costs, and attorneys' fees.

**<u>SECOND CAUSE OF ACTION</u>**
Violation of N.Y. Gen. Bus. § 349
Against The Boroff Firm, Process Server Plus, Diaz, and Lanzot
On behalf of Plaintiff and the Class

164.    New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business . . . in this state" and provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name" for injunctive relief, damages, and attorneys' fees.

165.    Defendants violate N.Y. Gen. Bus. § 349 by engaging in deceptive acts and practices in the conduct of their business. Defendants' violations include, but are not limited to:

a. Failing to lawfully effectuate service of process;

b. Preparing and signing false affidavits of service;

c. Filing false affidavits of service;

d. Filing affidavits of service without meaningful attorney review; and

e.   Posting Eviction Petitions on apartment doors under circumstances not permitted by law, effectively publicly identifying tenants who allegedly refuse to pay debt.

166.   Defendants' actions are consumer oriented and have had a broad impact on New York consumers at large.

167.   Defendants commit the above-described acts willfully and/or knowingly.

168.   Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiff and Class Members and, unless enjoined, will cause further injury.

169.   As a direct and proximate result of Defendants' violations, Plaintiff and Class Members have suffered and continue to suffer compensable harm and are entitled to recover actual and treble damages, costs, and attorneys' fees.

### THIRD CAUSE OF ACTION
Common Law Negligence
Against The Boroff Firm, Process Server Plus, Diaz, and Lanzot
On Behalf of Plaintiff and the Class

170.   Defendants The Boroff Firm, Process Server Plus, Diaz, and Lanzot, as debt collectors, owe a duty of reasonable care to alleged debtors, including Named Plaintiff and Class Members, in collecting their debts.

171.   Defendants The Boroff Firm, Process Server Plus, Diaz, and Lanzot breach this duty of care by doing, without limitation, the following:

a.   Failing to lawfully effectuate service of process;

b.   Preparing and signing false affidavits of service;

c.   Filing false affidavits of service;

d.   Filing affidavits of service without meaningful attorney review; and

e.   Posting Eviction Petitions on apartment doors under circumstances not permitted by law, effectively publicly identifying tenants who allegedly refuse to pay debt.

172.    Defendants The Boroff Firm and Process Server Plus each owe a duty to Plaintiff and Class Members to exercise reasonable care to refrain from knowingly employing or retaining in their employ, any person in a position that would present foreseeable risk of harm to Plaintiff and Class Members.

173.    Defendants breach this duty of reasonable care by continuing to employ and retain, in turn, Defendants Process Server Plus, and Diaz and Lanzot, despite the fact that they know or, in the exercise of reasonable care, should know that Class Members are not being served and false affidavits of service are being sworn and filed, which presents a foreseeable risk of harm to Plaintiff and Class Members.

174.    Defendants The Boroff Firm, Process Server Plus, Diaz, and Lanzot owe duties of care to Plaintiff and Class Members set forth by statute and regulation, including but not limited to the following:

   a.   Fair Debt Collection laws, including 15 U.S.C. §§ 1692d, 1692e, 1692f;

   b.   Unfair and Deceptive Trade Practices laws, including N.Y. G.B.L. § 349; and

   c.   Laws and Rules governing service of process, including N.Y.C. Admin. Code § 20-409.2.

175.    Defendants The Boroff Firm, Process Server Plus, Diaz, and Lanzot breached these duties of care.

176.    The legislative purpose of each of these statutes and regulations is to protect a certain class of persons, namely alleged consumer debtors and/or tenants, of which Plaintiff and all Class Members are members.

177.    As a direct and proximate result of the negligent conduct of the Boroff Firm, Process Server Plus, Diaz, and Lanzot, Plaintiff and Class Members have suffered and continue to suffer compensable harm and are entitled to recover actual damages.

29

**FOURTH CAUSE OF ACTION**
Violation of N.Y.C. Admin. Code § 20-409.2
Against Defendants Process Server Plus, Diaz, and Lanzot
On behalf of Plaintiff and the Class

178.    New York City Administrative Code § 20-409.2 states that "[a]ny person injured by the failure of a process server to act in accordance with the laws and rules governing service of process in New York state, including this subchapter and regulations promulgated thereunder, shall have a cause of action against such process server and process serving agency, which distributed or assigned process for service, in any court of competent jurisdiction."

179.    New York City Administrative Code § 20-409.2 allows individuals to recover compensatory damages, punitive damages (for willful failure to service process), injunctive and declaratory relief, costs, and attorneys' fees.

180.    Defendants Process Server Plus, Diaz, and Lanzot have violated New York City Administrative Code § 20-409.2 by failing to act in accordance with the laws and rules governing service of process in New York. Defendants' violations include, but are not limited to:

a.  Failing to lawfully effectuate service of process;

b.  Preparing and signing false affidavits of service;

c.  Filing false affidavits of service;

d.  Filing affidavits of service without meaningful attorney review; and

e.  Posting Eviction Petitions on apartment doors under circumstances not permitted by law, effectively publicly identifying tenants who allegedly refuse to pay debt.

181.    Defendants have committed the above-described acts willfully.

182.    Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiff and Class Members and, unless enjoined, will cause further injury.

183.    As a direct and proximate result of these violations of New York City Administrative Code § 20-409.2, Plaintiff and Class Members have suffered and continue to suffer compensable harm and are entitled to recover compensatory and punitive damages, costs, and attorneys' fees.

WHEREFORE, Plaintiff requests that this Court enter judgment against all Defendants:

a.  Certifying this case as a class action, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, with a Class defined as:

All individuals who have been or will be sued by the Boroff Firm in New York City Housing Court- Bronx County in lawsuits in which an affidavit of service has been or will be filed, stating that Diaz or Lanzot, on behalf of Process Server Plus, effectuated service of an eviction petition via conspicuous service.

b.  Declaring that Defendants have committed the violations of law alleged in this action;

c.  Enjoining and directing all Defendants to cease engaging in practices that violate the FDCPA, New York G.B.L. § 349, and N.Y.C. Admin. Code § 20-409.2 or constitute common law negligence;

d.  Awarding to Plaintiff and the Class:

   i.    actual and/or compensatory damages against all Defendants in amounts to be proven at trial;

   ii.   statutory damages pursuant to the FDCPA;

   iii.  treble damages pursuant to N.Y. G.B.L. § 349(h);

   iv.   punitive damages pursuant to N.Y.C. Admin Code § 20-409.2;

   v.    costs and attorneys' fees pursuant to the FDCPA, N.Y. G.B.L. § 349, and N.Y.C. Admin Code § 20-409.2; and

e.  Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable by a jury.

Dated: January 7, 2025
New York, New York

Respectfully submitted,

Lisa Rivera, Esq.
New York Legal Assistance Group
100 Pearl Street
New York, NY 10004
(212) 613-5000

By:

_____
Danielle Tarantolo, of counsel
(212) 613-6551
dtarantolo@nylag.org

_____
Jessica Ranucci, of counsel
Genesis Miranda, of counsel
James Tourangeau, of counsel
*Counsel for Plaintiff*