UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARITZA PRINCE, individually and on behalf of all
persons similarly situated,

Plaintiff,

-against-

**No. 24 Civ. 2706 (GHW) (GS)**

JASON D. BOROFF & ASSOCIATES, PLLC;
PROCESS SERVER PLUS, INC.; ENRIQUE DIAZ;
and EMMANUEL LANZOT,

Defendants.

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
CERTIFICATION OF A SETTLEMENT CLASS
<u>AND FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

NEW YORK LEGAL ASSISTANCE GROUP
100 Pearl Street, 19th Floor
New York, New York 10004
Telephone: (212) 613-5000

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ....................................................................................1

II.   BACKGROUND ......................................................................................................3

    A.   Allegations in the Complaint ........................................................................3

    B.   The Settlement ..............................................................................................3

    C.   Notice ............................................................................................................6

    D.   Claims, Allocation, Opt Outs, and Objections.............................................8

    E.   Counsel's Zealous Work on Behalf of the Class ..........................................9

III.  ARGUMENT .........................................................................................................11

    A.   The Court Should Grant Final Approval to the Settlement ........................11

        i. The Settlement is Procedurally and Substantively Fair .....................11

        ii.The Reaction of the Class Supports Settlement Approval.................13

    B.   Class Certification Should Be Granted .......................................................15

    C.   A Service Award Should Be Issued to Ms. Prince .....................................16

    D.   The Court Should Approve Class Counsel's Requested Attorneys' Fees .................17

IV.   CONCLUSION.......................................................................................................23

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Bailey v. Pataki*, No. 08 Civ. 8563, 2016 WL 3545941 (S.D.N.Y. June 16, 2016) .................... 21

*Becher v. Long Island Lighting Co.*, 64 F. Supp.2d 174 (E.D.N.Y.1999)................................... 20

*Beecher v. Able*, 575 F.2d 1010 (2d Cir. 1978) ........................................................................... 17

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)............................................ 11, 12

*Cruz v. Zucker*, No. 14 Civ. 4456, 2017 WL 1093285 (S.D.N.Y. Mar. 10, 2017)...................... 21

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) .............................. 22

*Garland v. Cohen & Krassner*, No. 08 Civ. 4626, 2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011) ................................................................................................................................. 16

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).................................... 11, 18, 21

*Gross v. Washington Mut. Bank, F.A.*, No. 02 Civ. 4135, 2006 WL 318814 (E.D.N.Y. Feb. 9, 2006) ...................................................................................................................... 16

*Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 01029, 2016 WL 5811888 (S.D.N.Y. Sept. 23, 2016). ................................................................................................................... 17

*Hayes v. Harmony Gold Min. Co.*, 509 Fed. App'x. 21 (2d Cir. 2013) ...................................... 20

*Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................... 20

*Homeaway.com, Inc. v. City of New York*, No. 18 Civ. 7742, 2021 WL 791232 (S.D.N.Y. Mar. 1, 2021) ................................................................................................... 21

*In re Blech Sec. Litig.*, No. 94 Civ. 7696, 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002)........... 20

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ............................................................................... 20

*In re GSE Bonds Antitrust Litig.*, No. 19 Civ. 1704, 2020 WL 3250593 (S.D.N.Y. June 16, 2020) ...................................................................................................................... 22

*In re IMAX Sec. Litig.*, No. 06 Civ. 6128, 2012 WL 3133476 (S.D.N.Y. Aug.1, 2012)............. 20

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) ................................... 13

*Maley v. Del Globals Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................... 12, 20

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009) ................................................ 11

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015) ...................................... 18

*O'Connor v. AR Res., Inc.*, No. 08 Civ. 1703, 2012 WL 12743 (D. Conn. Jan. 4, 2012) ........... 16

*Raniere v. Citigroup Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015) ...................................................... 19

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997)....................................................... 17

*Rubenstein v. Advanced Equities, Inc.*, No. 13 Civ. 1502, 2015 WL 585561 (S.D.N.Y. Feb. 10, 2015) .................................................................................................................. 21

*Schwab v. Philip Morris USA, Inc.*, No. 04 Civ. 1945, 2005 WL 3032556 (E.D.N.Y. Nov. 14, 2005) ..................................................................................................... 17

*Sidley Holding Corp. v. Ruderman,* No. 08 Civ. 2513, 2009 WL 6047187 (S.D.N.Y. Dec. 30, 2009) ..................................................................................................... 21

*Stinson v. City of New York*, 256 F. Supp. 3d 283 (S.D.N.Y. 2017) ........................... 13

*Sykes v. Mel S. Harris & Associates LLC*, 285 F.R.D. 279 (S.D.N.Y. 2012) ........................ 15, 16

*Torres v. City of New York*, No. 18 Civ. 03644, 2020 WL 6561599 (S.D.N.Y. June 3, 2020) .......................................................................................................... 21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .................................. 11, 22

*Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ......... 13

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................... 13

## Statutes

15 U.S.C. § 1692 ........................................................................................................ 3

15 U.S.C. § 1692k ...................................................................................................... 21

N.Y.C. Admin. Code § 20-409.2 ............................................................................... 3

New York General Business Law § 349 ............................................................... 3, 21

## Treatises

2 <u>McLaughlin on Class Actions</u> § 6:10 (18th ed. 2021) ............................................. 13

2 <u>McLaughlin on Class Actions</u> § 6:24 (17th ed. 2020) ............................................. 14

4 <u>Newberg and Rubenstein on Class Actions</u> § 12:27 (6th ed. 2023 ........................... 17

4 <u>Newberg on Class Actions</u> § 13.58 (5th Ed.) ........................................................ 13

## I.      PRELIMINARY STATEMENT

Named Plaintiff Martiza Prince, individually and on behalf of the class of 2,163 provisionally certified class members she represents (the "Class Members," and, together, the "Class"), seeks the Court's final approval of the comprehensive Boroff Settlement that the Court preliminarily approved on September 11, 2025. Preliminary Approval Order ("Prelim. Approval Order"), ECF No. 107. If finally approved, the Boroff Settlement will bring critical monetary and injunctive relief to thousands of Bronx residents.

Specifically, under the Boroff Settlement, the Boroff Firm has agreed to permanently cease all Evictions against a subset of Non-Appearing Class Members by refraining from taking any Eviction Step against these Class Members.[1] And, since the Court's Preliminary Approval Order, the Boroff Firm has paid a total of $212,500 into the Class Settlement Account, from which monetary distributions will be provided to Class Members who submit valid claims. *See* Declaration of Genesis Miranda in Support of Final Approval ("Miranda Decl.").

The details of the Boroff Settlement, and the process by which it was negotiated, were set forth in Plaintiff's Memorandum of Law in Support of Provisional Certification of a Settlement Class ("Pl. Prelim. Mem."), ECF No. 88, and the parties discussed the Settlement with the Court on September 11, 2025. Since that time, consistent with the Court's Preliminary Approval Order, Class Counsel directed the Class Administrator, Atticus Administration, to provide notices to Class Members and process claims they submitted; Class Counsel and Atticus have also engaged in other efforts to alert Class Members about the Settlement.

Notice was sent to Class Members eligible to receive payments from the Boroff

---

[1] All capitalized terms have the meanings assigned in the Settlement Agreement. Stipulation of Settlement and Release as to All Claims Against Defendant Jason D. Boroff & Associates, PLLC ("Boroff Settl.") § I, ECF No. 89-2.

Settlement through a variety of methods. All Class Members received a multi-page notice in English and Spanish via mail, as well as a postcard notice. Class Counsel took additional steps to reach Class Members who are in the Substantial Harm and Eviction Households groups, and thus eligible for higher tiers of relief under the Allocation Plan, via phone and email. The Objection, Exclusion, and Claim Submission deadline was initially set for November 20, 2025. ECF No. 107. Due to low response rates, Class Counsel requested, and the Court approved, that the Claim Submission deadline be extended to December 9, 2025. ECF No. 121. To date, 128 eligible Class Members have submitted a valid Claim Form (8%). Class Counsel expects Class Members to continue submitting Claim Forms through and until the extend Claim Submission Deadline. *Id.* No Class Members objected to the Settlement, and no Class Members opted out of the Settlement.

The provisionally certified class meets all of Rule 23's requirements and the provisionally approved Boroff Settlement satisfies all of the criteria for final approval. Plaintiff thus respectfully requests that the Court, following the Fairness Hearing scheduled for December 11, 2025:

> (i) certify this case as a class action for settlement purposes pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class defined as "all individuals sued by the Boroff Firm on behalf of a Lawsuit Landlord on or after April 10, 2021 in Bronx Housing Court in lawsuits in which the affidavit of service for the Eviction Petition has been filed stating that Diaz or Lanzot, on behalf of Process Server Plus, effectuated Conspicuous Service";

> (ii) appoint New York Legal Assistance Group ("NYLAG") as Class Counsel;

> (iii) grant final approval to the Boroff Settlement, including the monetary and injunctive relief to the Class, administration expenses, a service award, and attorneys' fees.

Plaintiff is filing a proposed Final Approval Order in connection with this motion, and will make a supplemental filing no later than December 10, 2025, as the Court directed. ECF No. 121.

## II.    BACKGROUND

### A.    Allegations in the Complaint

As described in detail in previous submissions, the Amended Complaint ("Am. Compl."), ECF No. 43, alleges as follows: landlords in the Bronx hired the Boroff Firm to bring housing court lawsuits against tenants; the Boroff Firm hired Process Server Plus, which, in turn, hired process servers Enrique Diaz and Emmanuel Lanzot, to effectuate service in those lawsuits; Diaz and Lanzot faked service and signed false affidavits of service claiming to have effectuated conspicuous service; and then the Boroff firm filed those false affidavits in court. As a result, the Amended Complaint alleges, these tenants were not lawfully notified of the eviction proceedings against them, and many had their lives upended by the threat of displacement from long-time homes. The Amended Complaint further alleges that no attorney at the Boroff Firm meaningfully reviewed the affidavits of service, and that, if they had done so, they would have or should have known that the affidavits of service were falsified. Am. Compl. ¶¶ 94-95.

Plaintiff brought claims on behalf of herself and the proposed class under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), New York General Business Law § 349, and N.Y.C. Admin. Code § 20-409.2, as well as common law negligence. The provisionally approved Settlement is solely with the Boroff Firm. Litigation remains ongoing against the other three defendants named in the Amended Complaint: Process Server Plus, Diaz, and Lanzot ("Process Server Defendants"). For a longer description of the factual allegations in the Amended Complaint and procedural history of this case, see Plaintiff's Memorandum of Law in Support of Provisional Certification of a Settlement Class and Preliminary Approval of Class Action Settlement ("Pl. Prelim. Mem."), ECF No. 88 at 3-6.

### B.    The Settlement

The Boroff Settlement is the product of intensive arm's length negotiations that took

place over the course of many months with the Boroff Firm. For a detailed description of the
Settlement negotiations and information reviewed by Class Counsel, see the Declaration of
Genesis Miranda in Support of Preliminary Approval ("Miranda Prelim. Decl."), ECF No. 89,
¶¶ 10-13 and Pl. Prelim. Mem. 5-7. The final Settlement provides the following relief to the
1,601 unique households, in the class comprising 2,163 Class Members:

*Monetary Relief:* Of the $212,500 that the Boroff Firm has paid into the Class Settlement
Account, at least $102,000 will be distributed to eligible Class Members according to the
Allocation Plan, ECF No. 89-3.[2] Additionally, Plaintiff seeks approval of a modest service award
to Ms. Prince of $5,000 in recognition of the service she rendered in pursuing claims against the
Boroff Defendant on behalf of the Class, and attorneys' fees and costs of $70,833 to the New
York Legal Assistance Group ("NYLAG"), a non-profit legal services provider. *See* Allocation
Plan ¶¶ 5d, f. A total of up to $29,667 has been allocated towards administration expenses to
Atticus Administration, LLC ("Atticus"), the class administrator, and Plaintiff has requested that
that amount be increased $34,667. *Id.* ¶ 5e; ECF No. 124. The Allocation Plan approved by
the Court provides that: (1) each Eviction Household who fills out a Claim Form gets a minimum
per capita payment of at least $1,200, per household; (2) each Substantial Harm Household who
fills out a Claim Form gets a minimum per capita payment of at least $386, per household; and
(3) each Procedural Harm Household who fills out a Claim Form gets a minimum per capita

---

[2] In connection with Plaintiff's motion for Preliminary Settlement Approval, Plaintiff advised
that the amount of money to distribute to Class Members would be at least $107,000. However,
as Plaintiff explained in her letter of November 24, 2025, ECF No. 124, because of low claim
rates, Plaintiff has authorized the Class Administrator to take additional steps to alert Class
Members about the Settlement. Plaintiff has requested that an additional amount up to $5,000 be
used to cover administrative expenses in connection with these further outreach efforts.
Accordingly, the amount that will be available to distribute to Class Members will be slightly
lower; in Class Counsel's view, this adjustment is in the best interest of the Class because it is
likely to substantially increase the number of Class Members who will receive distributions.

payment of at least $15, but no more than $50, per household. Allocation Plan ¶ 5.

*Cessation of Eviction:* The Boroff Firm has already ceased taking any Eviction Step against Non-Appearing Class Members. Boroff Settl. ¶ III.B. Upon the Final Settlement Date, Boroff will permanently cease taking any Eviction Steps against Non-Appearing Class Members. *Id.* ¶ III.B.2. The Boroff Stipulation provides for a few narrow exclusions which are not inconsistent with the spirit of the agreement and reflect the intensive negotiations between the Settling Parties. *Id.* ¶ III.B.3-4. Absent the Settlement, the Boroff Firm could file for a new Eviction Warrant Requisition; arrange for the service of an Eviction Warrant; or actually evict Class Members.

*Changed Business Practices:* The Boroff Firm has ceased doing business with the Process Server Defendants and has agreed to various changed business practices going forward. Boroff Settl. ¶ III.C. Among these, the Boroff Firm will issue, and adhere to, policies and procedures regarding oversight of service of process, including, *inter alia*, review of affidavits of service by Boroff Firms attorneys and due diligence on process serving agencies and individual process servers hired by the Boroff Firm. *Id.*

For a more detailed description of the relief provided to the Class, see Pl. Prelim. Mem. 7-13 and Miranda Prelim. Decl. ¶¶ 11-12, 17.

On June 20, 2025, Plaintiff submitted her Motion for Preliminary Approval, and on September 11, 2025, the Settling Parties appeared before the Court to discuss the proposed Settlement. Following that proceeding, Plaintiff and the Class Administrator made certain adjustments to the Notices and Claim Form based on the Court's suggestions, including by clarifying certain parts of the Notices and by adding a "certification" box to the Claim Form, requiring each Class Member wishing to submit a claim to select a box that says: "[b]y clicking

this box I certify that to the best of my knowledge I was not lawfully served with service of process in the housing court case described in my notice." *See* Claim Form, Ex. G to Declaration of Bryn Bridley ("Atticus Decl.").

On September 11, 2025, the Court entered the Preliminary Approval Order, which directed that Notices be mailed to the Class, ordered that a Fairness Hearing be held on December 11, 2025, and set other interim deadlines for administration of the Settlement. ECF No. 107. The Court also entered an order ("Bar Order") barring all cross-claims against the Boroff Firm by Process Server Plus, Diaz, and Lanzot for contribution, indemnity and/or other non-independent claims, with the bar to go into effect upon the Final Settlement Date. ECF No. 106.

### C.    Notice

To reach the greatest number of Class Members and to encourage a high participation rate from Class Members, Class Counsel and Atticus collaborated to take a number of steps that far exceed what is typical in a settlement of this nature.

First, on October 6, 2025, Atticus mailed the written Notice approved by the Court, as modified to implement the Court's suggestions, ECF Nos. 89-4, 89-5, 89-6, and 130-1, to all 1,601 unique households comprising 2,163 unique Class Members. Atticus Decl. ¶ 8. In all, 93% of Notices were successfully sent. *Id*. Second, on October 31, 2025, Atticus sent to 165 Substantial Harm and Eviction Households a reminder postcard notice. *Id.* ¶ 12. Third, Atticus conducted skip tracing to obtain telephone numbers for Substantial Harm and Eviction Households, and on October 31, 2025, sent a notice via text message to telephone numbers identified through skip tracing. *Id.* ¶¶ 9-12. Fourth, Atticus conducted skip tracing to obtain additional addresses for Procedural Harm Households, and on November 10, 2025, Atticus mailed a postcard notice to 1,349 Procedural Harm Households who had not yet submitted a

valid claim form. *Id.* ¶¶ 13-14. Fifth, on November 11, 2025, Atticus sent a second text notice to 111 Substantial Harm and Eviction Households who had not yet filed claims. *Id.* ¶ 15. Fifth, Atticus conducted skip tracing to obtain email addresses for Substantial Harm and Eviction Households. On November 20, 2025, Atticus sent notice via email to email addresses identified through the skip tracing to 100 of the 153 Substantial Harm and Eviction Households who had not yet filed claims. *Id.* ¶ 17.

Class Counsel has made additional efforts to attempt to reach the approximately 165 Substantial Harm and Eviction Households who were most harmed by the allegations in the complaint, and thus stood to obtain the highest payments from submitting a Claim Form. Specifically, the Class Administrator called 122 Substantial Harm and Eviction Households that had not yet submitted claims to confirm that they received the Class Notice and provide information about the settlement options. Atticus Decl. ¶ 16. Additionally, Class Counsel has directly contacted 44 Class Members. Miranda Decl. ¶¶ 9-11. Of the 44 Class Members contacted, Class Counsel was able to speak with ten Class Members and assisted two Class Members in filing a claim. *Id.* The claims rate for the Substantial Harm and Eviction Class Members is approximately 22.3%. Atticus Decl. ¶ 27. Through this process, Class Counsel and Atticus spoke personally with a number of Class Members. Atticus Decl. ¶ 16; Miranda Decl. ¶¶ 10-11. Class Members who spoke with Atticus and NYLAG did not express any disapproval of the settlement. Atticus Decl. ¶ 24; Miranda Decl. ¶ 12.

To supplement the information provided to potential Class Members through the rounds of notice, Atticus created a Settlement website, www.improperservicesettlement.com, which was made public prior to the distribution of Notices on October 6, 2025. Atticus Decl. ¶ 22. The Settlement website provides information about the lawsuit, who qualifies as a Class Member,

what the Settlement provides, and Class Members' rights; key documents, like the Claim Form and litigation documents; frequently asked questions; and contact information for Atticus. *Id.* As of November 25, 2025, the Settlement website had received 992 visits from 624 unique users. *Id.* ¶ 23. Further, Atticus created a toll-free hotline at 1-800-331-9006 prior to the mailing of Notices on October 6, 2025, and secured an email address: improperservicesettlement@ atticusadmin.com. *Id.* ¶¶ 24-25. Class Members were provided the opportunity to leave a voicemail message with questions and receive follow up from an Atticus customer support specialist. *Id.* ¶ 24. As of November 25, 2025, Atticus received 142 calls and 35 emails from Class Members. *Id.* ¶¶ 24-25. To date, Atticus has incurred expenses of $29,308. Atticus Decl. ¶ 37.

Lastly, Class Counsel has a dedicated case page, https://nylag.org/prince-v-boroff-et-al, with a timeline of the litigation, key litigation documents, a hyperlink to the Settlement website, and information about the Fairness Hearing. Miranda Decl. ¶ 7.

On September 12, 2025, Defendant Boroff represented to Class Counsel that CAFA Notices were timely mailed. Miranda Decl. ¶ 30.

### D.    Claims, Allocation, Opt Outs, and Objections

As of November 20, 2025, which was the Objection and Exclusion Deadline set by the Court's Preliminary Approval Order, no Class Members objected to the Settlement, and no Class Members opted out of the Settlement. Atticus Decl. ¶ 28. As of November 26, 2025, Atticus received 126 valid Claim Forms, representing approximately 8% of the 1,601 unique households comprising 2,163 Class Members eligible for compensation. *Id.* ¶ 26. Class Counsel expects Class Members to continue to file claim forms through December 9, 2025, the extended Claim Submission deadline set by the Court in response to Plaintiff's request, which Plaintiff made in order to engage in additional outreach to Class Members in an effort to improve the Class's

response rate. ECF No. 121.

Class Counsel seeks to distribute funds to the maximum possible number of Class Members. Pursuant to the extended Claim Submission deadline, Class Counsel has directed Atticus to continue to accept valid claims filed up until December 9, 2025. ECF 121. Moreover, the Preliminary Approval Order expressly permits Class Counsel to continue to accept otherwise-valid claims filed up until the date final approval is granted. Prelim. Approval Order ¶ 9. Class Counsel is actively continuing to reach out to Eviction and Substantial Harm Households who are eligible for the highest tiers of relief. Because Class Members are still submitting claims as of the date of this motion, it is too early to determine the awards that Class Members are likely to receive. Plaintiff will provide updated data detailing the total claims filed through Claim Submission Deadline before or at the Fairness Hearing. ECF No. 121. Depending on the results of the outreach that Class Counsel and Atticus are currently pursuing, Class Counsel may make a recommendation to the Court about a further extension of the Claim Submission Deadline, as reflected in the Proposed Final Approval Order. Miranda Decl., Ex A., ¶ 7.

### E.    Counsel's Zealous Work on Behalf of the Class

The New York Legal Assistance Group ("NYLAG") is a nonprofit legal services provider dedicated to helping New Yorkers experiencing poverty or in crisis, and combatting financial and other injustice. Miranda Prelim. Decl. ¶ 41. NYLAG provides free legal representation to New Yorkers who would not otherwise have the means to obtain private counsel to assist them. *Id*. NYLAG's Tenants' Rights Unit fights to preserve housing, prevent homelessness, ensure economic security for families, and promote stability in New York City communities. *Id*. ¶ 42.

NYLAG initially represented Ms. Prince and several other Class Members after those individuals were referred through a state senator's office. *Id*. ¶ 43. Thereafter, NYLAG spent

hundreds of hours diligently investigating the pattern of conduct that is the subject of the Amended Complaint. *Id*. ¶ 44. NYLAG did so by interviewing and reviewing documents collected from Ms. Prince and other Class Members, conducting other research based on publicly available sources, and then reviewing hundreds of lawsuits filed by the Boroff Firm in Bronx Housing Court. *Id*. ¶ 45.

Through its efforts in reviewing and analyzing the publicly available evidence in this case, NYLAG developed an extremely strong evidentiary basis for the Class's claims; for example:

- NYLAG identified a sample of 200 eviction lawsuits filed in Bronx Housing Court by the Boroff Firm between January and July 2023, and in which 400 affidavits of service were filed, *id*. ¶ 46;
- NYLAG's review of the 400 affidavits signed by Diaz (290 affidavits) and Lanzot (110 affidavits) on behalf of Process Server Plus showed that in 361 out of 400 affidavits (90%), Diaz and Lanzot claimed to have effectuated service through conspicuous service; in 39 (10%) of the reviewed affidavits they claimed to make substitute service (handing the papers to an adult in the apartment other than the tenant); and in zero (0%) of the reviewed affidavits they claimed to make personal service (handing the papers directly to the tenant), *id*.;
- The affidavits of service sworn by Diaz and Lanzot, in many other cases, demonstrate very short lengths of time between purported instances of attempted or completed service—showing, for example, 175 instances in which Diaz or Lanzot swore to have attempted or completed service three minutes or less after a different purported attempted or completed service, *id*. ¶ 47.

NYLAG negotiated the Settlement Agreement over the course of many months of arms' length negotiations with the Boroff Firm.

NYLAG has continued to work zealously on behalf of the Class since preliminary approval of the Settlement was granted. Specifically, NYLAG has expended many dozens of hours preparing and reviewing the notices in English and Spanish, and other settlement materials, such as the settlement website, communicating with the Class Administrator, reviewing data on the class and settlement progress, and contacting individual Class Members

regarding the Settlement. Miranda Decl. ¶¶ 6-11.

Notably, as a legal services provider, NYLAG has over decades assisted hundreds of clients affected by Defendant's business practices. With the resolution of this case, Defendant Boroff will no longer be able to engage in the practices challenged by the Amended Complaint, providing a crucial benefit to NYLAG's clients and Bronx residents, many of whom live in communities of color and communities experiencing poverty.

## III.    ARGUMENT

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted). Under Federal Rule of Civil Procedure 23(e), a court should approve a class action Settlement if it finds, in its discretion, that it is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart*, 396 F.3d at 116; Fed. R. Civ. P. 23(e)(2); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted) ("Grinnell"), *abrogated on other grounds*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) (setting forth factors for Court to consider in determining whether settlement is fair, reasonable, and adequate).

### A.    The Court Should Grant Final Approval to the Settlement

#### i.  The Settlement is Procedurally and Substantively Fair

As described in detail in Plaintiff's Preliminary Memorandum, the Settlement is both procedurally and substantively fair. *See id.*; Pl. Prelim. Mem. 18-25; *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-804 (2d Cir. 2009). Specifically:

- Named Plaintiff and Class Counsel have more than adequately represented the Class throughout the litigation, Fed. R. Civ. P. 23(e)(2)(A). Class Counsel performed hundreds of hours of work on this litigation, and Named Plaintiff contributed substantial time and effort. Miranda Prelim. Decl. ¶¶ 10-15, 17-23, 44-47; Pl. Prelim. Mem. 18;

- The Settlement was negotiated at arm's length, Fed. R. Civ. P. 23(e)(2)(B). Class Counsel and Defendant Boroff Firm engaged intensive negotiations that spanned many months. Miranda Prelim. Decl. ¶¶ 10-14, 44; Pl. Prelim. Mem. 5-7, 19;

- The relief provided for the class is more than adequate, considering the costs, risks, and delay of trial and appeal, Fed. R. Civ. P. 23(e)(2)(C)(i). Specifically:

  o Continued litigation would likely be highly complex and expensive, and would have entailed delay carrying serious and real harm to the Class as the Eviction Cessation would not apply, allowing the Boroff Firm to take Eviction Steps that would cause significant, irreversible harm if the Settlement is not approved (*Grinnell* Factor 1), Pl. Prelim. Mem. 19-20;

  o There are inherent risks to establishing both liability and damages (*Grinnell* Factors 4 and 5). Pl. Prelim. Mem. 20-21;

  o There is some risk that Plaintiff would not be able to maintain this case as a class action (*Grinnell* Factor 6), as Defendant the Boroff Firm would oppose class certification. Pl. Prelim. Mem. 21;

  o While it is possible that the Boroff Firm has the ability to withstand a greater judgment (*Grinnell* Factor 7), the Settlement provides not only monetary relief but also valuable injunctive relief. Pl. Prelim. Mem. 21;

  o The Settlement is reasonable in light of the best possible recovery and attendant risk of litigation (*Grinnell* Factors 8 and 9). Pl. Prelim. Mem. 21-22;

- The method of claims processing is effective, Fed. R. Civ. P. 23(e)(2)(C)(c)(ii). 126 of 2,163 eligible Class Members (8%) have submitted claim forms. Atticus Decl. ¶ 126;

- The $70,833 in attorneys' fees sought by Class Counsel is reasonable, *see* Fed. R. Civ. P. 23(e)(2)(C)(ii); Pl. Prelim. Mem. 22-23;

- Other than the February 4, 2025 Term Sheet, which is superseded by the Boroff Settlement, there are no agreements that have been made in connection with the proposed settlement. Fed. R. Civ. P. 23(e)(2)(C)(iv); Miranda Prelim. Decl. ¶ 48; Pl. Prelim. Mem. 23; ECF Nos. 89-2.

- The proposed Allocation Plan is equitable, Fed. R. Civ. P. 23(e)(2)(D), and accounts for the severity of injury by providing higher compensation to those Class Members who have been most harmed by the conduct alleged in the Amended Complaint without arbitrarily treating dissimilarly situated Class Members. Allocation Plan ¶¶ 5-6; Pl. Prelim. Mem. 23-25;

- The Settlement is substantively fair in light of the third *Grinnell* factor, because the Settling Parties immediately proceeded to settlement; reviewed over 1,000 publicly available affidavits of service, thus shortcutting much of the work that would have been completed through a typical discovery process; and, because Class Counsel has previously litigated a case with similar allegations, Counsel were deeply aware of the litigation strengths and risks of such claims. Pl. Prelim. Mem. 25-26.

### ii. The Reaction of the Class Supports Settlement Approval

The positive reaction of the Class to the Settlement (the second *Grinnell* factor) supports final approval. "It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002); 4 Newberg on Class Actions § 13.58 (5th Ed.) ("Newberg") ("[T]he class's reaction should be the central factor courts look to, as the judicial function at settlement is precisely to safeguard the absent class members' interest.").

No Class Members objected to or opted out of the Settlement. Atticus Decl. ¶ 28. Few class member objections "may itself be taken as evidencing the fairness of a settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997); *see also* Newberg § 13.58 ("[I]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Stinson v. City of New York*, 256 F. Supp. 3d 283, 290 (S.D.N.Y. 2017) (key inquiry is "absence of significant exclusion[s] or objection[s]"); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven of 2,025 class members objected and two requested exclusion); *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) ("that the vast majority of class members neither objected nor opted out is a strong indication" of fairness); 2 McLaughlin on Class Actions § 6:10 (18th ed. 2021) ("[T]he absence of objectors or receipt of a relatively small number of objections and opt-outs supports the conclusion that the settlement is adequate.").

As of the date of this submission, 126 Class Members have submitted Claim Forms, a response rate of 8%. Atticus Decl. ¶ 26. As of November 25, 2025, among the subset of Class Members who will receive the most compensation under the Settlement, approximately 19% have submitted a valid claim. *Id.* As noted, Class Counsel and the Class Administrator are engaged in ongoing, vigorous efforts to reach additional Class Members and continue to raise

this response rate before the Claim Submission Deadline. *Id*.

"Claims-made settlements typically have a participation rate in the 10-15 percent range. Indeed, in the consumer class action context a claim participation rate as low as 3 percent is not unusual." 2 McLaughlin on Class Actions § 6:24 (17th ed. 2020).[3] A number of factors have made reaching this particular Class even more challenging than in a typical case. First, the Amended Complaint alleges that Class Members were not served in the underlying eviction actions and thus many may to date be unaware that any lawsuits were even filed against them. Accordingly, the notices they received might not make sense to them. Second, the only address information that Plaintiff possessed for most Class Members reflected the addresses the Boroff Firm listed in the eviction proceedings. Some number of Class Members have, in fact, been evicted from their housing at those addresses, making those addresses no longer accurate. And, given typical trends in households that reside in this region of the Bronx, many other Class Members have almost certainly moved from those addresses for other reasons. That is why Class Counsel directed Atticus to conduct address skip tracing for the households eligible for the highest level of relief, so that notices could be sent to other potentially valid addresses. Third, in Class Counsel's experience, the most effective way to reach households like Class Members' is via text and email, not postal mail. However, the Boroff Firm did not have phone numbers or

---

[3] *See also Sullivan v. DB Investments, Inc*., 667 F.3d 273, 329 (3d Cir. 2011) (en banc) (citing expert testimony that "consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns"); *Hillson v. Kelly Servs. Inc*., No. 15 Civ. 10803, 2017 WL 3446596, at *2 (E.D. Mich. Aug. 11, 2017) (noting expert testimony that "response rates in class actions generally range from 1 to 12 percent, with a median response rate of 5 to 8 percent"); Federal Trade Commission, Consumer and Class Actions: A Retrospective Analysis of Settlement Campaigns 2, *available at* https://www.ftc.gov/system/files/documents/reports/ consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness _report_0.pdf (surveying class administrators for 149 class action settlements and finding that the overall claims rate was less than 10%).

email addresses for these individuals. Class Counsel thus directed Atticus to conduct skip tracing for that information, which has been helpful in improving the response rate, but such information invariably contains inaccuracies. Fourth and finally, again in Class Counsel's experience, households like these, who have by definition been involved in legal proceedings that deeply threatened their stability, tend to be highly suspicious of legal documents. The barriers to persuading even those Class Members who received the notices to actually submit claims was substantial. That the participation rate has been as high as it currently is has directly resulted from the diligence of Atticus and Class Counsel.

Although Atticus has received 142 calls, 35 emails and 922 webpage visits, no one has expressed substantive fairness concerns about the Settlement. Atticus Decl. ¶¶ 23-25. Additionally, Plaintiff has expressed her approval of the Settlement. Miranda Prelim. Decl. ¶ 23; Pl. Prelim. Mem. 18. Class Counsel spoke to a number of Class Members during the claims period; none expressed disapproval about the Settlement. Miranda Decl. ¶ 12.

### B.    Class Certification Should Be Granted

As part of the Preliminary Approval Order, this Court provisionally certified a Settlement class, pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), consisting of "All individuals sued by the Boroff Firm on behalf of a Lawsuit Landlord on or after April 10, 2021 in Bronx Housing Court in lawsuits in which the affidavit of service for the Eviction Petition has been filed stating that Diaz or Lanzot, on behalf of Process Server Plus, effectuated Conspicuous Service." Prelim. Approval Order ¶ 2. For the same reasons that supported the grant of provisional certification, this Court should grant final certification for Settlement purposes. Specifically:

- *Sykes v. Mel S. Harris & Associates LLC*, a Second Circuit decision affirming certification of a class of New York City consumers asserting FDCPA and N.Y. Gen. Bus. Law § 349 claims against a debt collection law firm, a process serving agency, and individual process servers, is strong support for certification here because it arose from very similar facts. *See Sykes v. Mel S. Harris & Associates LLC* ("*Sykes I*"), 285 F.R.D.

279, (S.D.N.Y. 2012), *aff'd*, *Sykes II*, 780 F.3d at 70. Like the Named Plaintiffs here, the *Sykes* plaintiffs alleged that the attorney defendants filed standard affidavits of service and other litigation documents that "follow[ed] a uniform format," *Sykes II*, 780 F.3d at 77, that those documents allegedly contained false statements that class members were lawfully served with process, *id*. at 76-78, and that defendants' filing of such documents was "necessary to effectuating defendants' alleged scheme" to extract money through unlawful New York City Civil Court lawsuits," *id*. at 85. Pl. Prelim. Mem. 27-29.

- The Settlement Class, which has 1,601 unique households comprising 2,163 members, easily satisfies Rule 23(a)(1)'s numerosity requirement. Pl. Prelim. Mem. 34; Atticus Decl. ¶¶ 4-5, Miranda Decl. ¶ 4;

- There are "questions of law [and] fact common to the class," Fed. R. Civ. P. 23(a)(2). Pl. Prelim. Mem. 34-35;

- The claims of the Named Plaintiff are typical of those of other Class Members as required by Rule 23(a)(3). Pl. Prelim. Mem. 30;

- The interests of the Named Plaintiff are aligned with those of Class Members and she thus is an adequate representative under Rule 23(a)(4). Pl. Prelim. Mem. 30-31;

- The requirements for certification of an injunctive class under Rule 23(b)(2) are met, since the Defendant Boroff Firm has acted on grounds that apply generally to the class so that final injunctive relief is appropriate for the class as a whole. Pl. Prelim. Mem. 31;

- The requirements for certification of a damages class under Rule 23(b)(3) are also met, because common legal and factual issues predominate over individual issues, a class action is the superior method of adjudication since most Class Members would be unable to file individual litigation to protect their rights, and all members of the proposed Class have already been identified and notified, so the implied requirement of ascertainability is satisfied. Pl. Prelim. Mem. 31-33;

- NYLAG merits appointment as Class Counsel under Rule 23(g), given counsel's extensive experience, their qualifications, and their demonstrated commitment to public service. Pl. Prelim. Mem. 33-34.

### C.    A Service Award Should Be Issued to Ms. Prince

The Court has granted preliminary approval to the modest Service Award of $5,000 to Named Plaintiff Maritza Prince provided by the Settlement and final approval of that award is now warranted. Prelim. Approval Order ¶ 3(e); Allocation Plan ¶ 5.d; Boroff Settl. § 3.A.4. This amount is "consistent with the range of awards made in" similar cases in this Circuit.[4]

---

[4] *O'Connor v. AR Res., Inc*., No. 08 Civ. 1703, 2012 WL 12743, at *9 (D. Conn. Jan. 4, 2012) ($2,000 service award); *see also Garland v. Cohen & Krassner*, No. 08 Civ. 4626, 2011 WL 6010211, at *14 (E.D.N.Y. Nov. 29, 2011) ($3,000 service award); *Gross v. Washington Mut.*

Ms. Prince "play[ed] a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny." *Guippone v. BH S&B Holdings LLC*, No. 09 CIV. 01029 (CM), 2016 WL 5811888, at *8 (S.D.N.Y. Sept. 23, 2016). Although she was not deposed, she contributed substantial time and effort by meeting with Class Counsel, and providing documents and information to assist in litigation. Miranda Prelim. Decl. ¶ 22. She undertook these efforts despite being a monolingual Spanish speaker with limited means and little familiarity with proceedings of this nature. *Id*. ¶ 23.[5] In light of the "time and efforts" expended, and the "added value" Ms. Prince "br[ought] to bear" on the litigation, the service award is reasonable. *Roberts v. Texaco, Inc*., 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

### D.    The Court Should Approve Class Counsel's Requested Attorneys' Fees

As part of the Preliminary Approval Order, this Court provisionally approved an award of attorneys' fees and expenses to Class Counsel in the amount of up to $70,833. Prelim. Approval Order ¶ 3(d). Plaintiff now moves the Court pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2) for a final award of attorneys' fees and costs of $70,833. This award is specifically authorized by the Boroff Stipulation, which provides for a payment of reasonable attorneys' fees up to that amount to be awarded by the Court. Boroff Settl. § III.A. All attorneys' fees in the Settlement will go to NYLAG, a non-profit legal services organization serving New Yorkers experiencing poverty, and will support NYLAG's ongoing work to assist New Yorkers who

---

*Bank, F.A*., No. 02 CV 4135, 2006 WL 318814, at *6 (E.D.N.Y. Feb. 9, 2006) ($5,000 service award).

[5] *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978) (quoting *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972)); 4 <u>Newberg and Rubenstein on Class Actions</u> § 12:27 (6th ed. 2023) (approving distribution to "a group of individuals that closely approximates the class itself"); *Schwab v. Philip Morris USA, Inc.*, No. 04 Civ. 1945, 2005 WL 3032556, at *17 (E.D.N.Y. Nov. 14, 2005) (noting that "fluid recovery has been so widely used in settled cases—and that its use has been repeatedly affirmed by the court of appeals throughout the country, including the Second Circuit Court of Appeals").

would not otherwise have the means to obtain private counsel to assist them. Miranda Prelim. Decl. ¶ 41.

"[W]here an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class[,] . . . the attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). To determine whether the fee is "reasonable under the circumstances," *id.* (quotation omitted), courts consider the following six factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the Settlement; and (6) public policy considerations. *Id.* at 50; *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015). These factors support approval here.

*Time and Labor Expended by Counsel:* Based on a conservative review of time records, Class Counsel have expended over 300 hours on this action and Settlement, even as of the submission of Plaintiff's preliminary approval motion. Miranda Decl. ¶ 16. This time was spent zealously investigating and prosecuting Defendant Boroff's conduct, starting months before the Complaint was filed, through the submission of this motion, including:

- collecting documents from and thoroughly interviewing Named Plaintiff and investigating her claims, Miranda Prelim. Decl. ¶¶ 43-45;

- speaking with several Class Members, and NYLAG's Tenants' Rights Units clients, and reviewing their documents and providing legal advice regarding this case and their underlying state court Actions, *id.*;

- filing an exceedingly detailed Complaint and Amended Complaint, *id.* ¶ 20; *see also* ECF Nos. 15, 43;

- negotiating this Settlement with the Boroff Firm over the span of many months, including the exchange of numerous settlement proposals and counter-proposals, *id.* ¶¶ 10;

- preparing Plaintiff's preliminary approval motion and this final approval motion;

- drafting class notices, and then working with Atticus to ensure that notices were translated from English to Spanish and sent to the Class Members, directing Atticus to undertake additional outreach to Class Members, and generally managing the administration of the Settlement, Miranda Decl. ¶¶ 6-13.

Additionally, Class Counsel will expend more hours in the future working on this action, including coordinating with Atticus to distribute payments, following up individually with Class Members regarding their Settlement payments and other issues relating to the Settlement, and considering whether further distributions are appropriate. *Id.* ¶ 22.

*Magnitude and Complexity of the Litigation:* This action and Settlement are complex, affecting over 2,000 Class Members and involving technical claims under the FDCPA and other statutes. Pl. Prelim. Mem. 19-20; Miranda Prelim. Decl. ¶ 15.

*Risk of the Litigation:* The risk faced by the Class of pursuing this litigation to completion was high. As described above, from the outset, there was some degree of risk as to whether a class would be certified, and whether Plaintiff would prevail on liability, including the inherent risk in determining Defendant Boroff's class-wide liability and uncertainty regarding the amount of damages that Plaintiff could obtain in light of governing FDCPA and state law precedent and Defendant Boroff's likely inability to withstand a substantial judgment. *See* Pl. Prelim. Mem. 20-21. Moreover, NYLAG is a nonprofit legal services organization, and devoted substantial resources to this action with substantial risk that it would never recover attorneys' fees of the type that supports its work.

*Quality of the Representation:* "To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 221 (S.D.N.Y. 2015) (quotation omitted). Here, as described above, the recovery obtained is significant and will substantially benefit the

19

class. NYLAG has significant experience with complex and class litigation and is highly qualified. Miranda Decl. ¶¶ 23-28; Miranda Prelim. Decl. ¶¶ 41-42.

*Requested Fee in Relation to the Settlement:* The size of the fee award is equal to one third of the Settlement Fund, well within the bounds of fees awarded within this district. *See, e.g., Hayes v. Harmony Gold Min. Co.*, 509 Fed. Appx. 21, 23–24 (2d Cir. 2013) (summary order) (affirming an awarded fee of one third of a $9 million settlement, and noting that "the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class"); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *11 (S.D.N.Y. Nov. 9, 2015), ("A fee award of one-third of the Settlement Fund 'is well within the range accepted by courts in this circuit.'" (quoting *Becher v. Long Island Lighting Co*., 64 F. Supp. 2d 174, 182 (E.D.N.Y.1999) and collecting cases), *aff'd*, 674 F. App'x 37 (2d Cir. 2016).[6] But the full picture of the Settlement suggests that the award is even more modest as compared to the relief for the Class, when considering the substantial, if difficult to quantify, value of the injunctive relief provided in the Settlement in the form of Eviction Cessation.

*Public Policy Considerations:* In addition, public policy considerations strongly support the requested fees here. NYLAG is a nonprofit legal services organization that provides representation to New Yorkers like Ms. Prince, who would not otherwise have the means to obtain private counsel to assist them. Miranda Prelim. Decl. ¶¶ 41, 43. A fee award to NYLAG

---

[6] *See also In re IMAX Sec. Litig*., No. 06 CIV. 6128 NRB, 2012 WL 3133476, at *7 (S.D.N.Y. Aug.1, 2012); *In re Blech Sec. Litig*., No. 94 CIV. 7696, 2002 WL 31720381, at *1 (S.D.N.Y. Dec.4, 2002); *Hicks v. Stanley*, No. 01 CIV. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005); *Maley v. Del Global Techs. Corp*., 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 189 (W.D.N.Y. 2005); *In re Initial Pub. Offering Sec. Litig*., 671 F. Supp. 2d 467 (S.D.N.Y. 2009).

would support ongoing work on behalf of New Yorkers in need. *Id.* ¶ 42. Moreover, multiple statutory provisions under which Plaintiff brought this action provide for fee-shifting, precisely to encourage qualified counsel like NYLAG to commit resources to prosecuting private claims to enforce the law. *See* 15 U.S.C. § 1692k; N.Y. G.B.L. § 349(h). Finally, lawsuits like this have a substantial and socially useful deterrent effect on future misconduct by other actors.

*Cross-Check with the Lodestar:* The Second Circuit "encourage[s]" District Courts to review Class Counsel's lodestar as a "'cross check' on the reasonableness of the requested percentage" fee awarded from the Settlement Fund. *Goldberger*, 209 F.3d at 50. "[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court"; rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Id.*[7] The combined lodestar for Class Counsel is over $100,000 even as of submission of the preliminary approval motion in this case, which is substantially higher than the award sought here. Miranda Decl. ¶¶ 16, 19.

NYLAG calculated its lodestar using rates within the range of fee awards in this district. Miranda Decl. ¶ 18.[8] Numerous attorneys, paralegals, interns, and a legal fellow have worked on

---

[7] Because an exhaustive review of documented hours is not required here, Class Counsel have not attached their full fee records. Class Counsel can produce these records to the Court upon request. Miranda Decl. ¶ 21.

[8] *See, e.g.*, *Homeaway.com, Inc. v. City of New York*, No. 18-cv-7742 (PAE), 2021 WL 791232, at *17 (S.D.N.Y. Mar. 1, 2021) (noting that rates often "cluster in the $350-450 per hour range"); *Torres v. City of New York*, No. 18 Civ. 03644, 2020 WL 6561599 (S.D.N.Y. June 3, 2020) (approving rates ranging from $200 to $600 per hour); *Cruz v. Zucker*, No. 14-CV-4456 (JSR), 2017 WL 1093285, at *3 (S.D.N.Y. Mar. 10, 2017) (noting that average award of approximately $400 per hour to non-profit attorneys "appear[ed] to be somewhat below market"); *Bailey v. Pataki*, No. 08 Civ. 8563, 2016 WL 3545941, at *6 (S.D.N.Y. June 16, 2016) (awarding $550 per hour to attorneys with over a decade of experience); *Rubenstein v. Advanced Equities, Inc.*, No. 13 Civ. 1502 (PGG), 2015 WL 585561, at *6-7 (S.D.N.Y. Feb. 10, 2015) (finding hourly rate of $525 reasonable for highly experienced partners and $350 blended rate reasonable for associates); *Sidley Holding Corp. v. Ruderman*, No. 08 Civ. 2513(WHP) (MHD), 2009 WL 6047187, at *26 (S.D.N.Y. Dec. 30, 2009), *R. & R. adopted*, 2010 WL 963416 (S.D.N.Y.

this matter at different times and on different portions of the case; however, in the exercise of billing judgment, NYLAG has included in this lodestar calculation only the fees of certain timekeepers over certain time periods through submission of the preliminary approval motion, and has excluded significant work that would otherwise be compensable. Miranda Decl. ¶¶ 15-17. Moreover, Class Counsel's calculated lodestar does not include the number of hours that Class Counsel spent since submission of the preliminary approval motion and will be spent in the future. *Id.* ¶ 22.

Comparing the requested amount with the lodestar in this case underscores the reasonableness of this fee request. The fee award sought is less than Class Counsel's conservative estimated lodestar, orders of magnitude below awards that are commonly approved in this Circuit, which often *exceed* the lodestar by multiples. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (upholding award that was 350% of Class Counsel's lodestar, and noting that awards of 300-450% of the lodestar "have become common" (quotation omitted)); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (approving award that was 530% of Class Counsel's lodestar, and noting that courts "regularly award" of 200-600% of the lodestar (quotation omitted)); *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2020 WL 3250593, at *5 (S.D.N.Y. June 16, 2020) (approving fee award that was 409% of the lodestar).

---

Mar.15, 2010) (noting, over a decade ago, that "recent fee awards within the district reflect hourly rates in the range of $450.00 to $600.00 for experienced partners, $350.00 for senior associates, $250.00 for junior associates, and $125.00 to $170.00 for paralegals").

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the Boroff Settlement final approval, certify a class in this matter for Settlement purposes, appoint NYLAG as class counsel, approve a Service Award to Ms. Prince, and approve the requested attorneys' fees.


Dated: December 1, 2025
      New York, New York

   */s/ Danielle Tarantolo*

Danielle Tarantolo
NEW YORK LEGAL ASSISTANCE GROUP
100 Pearl Street, 19th Floor
New York, NY 10004
(212) 613-5000
dtarantolo@nylag.org

*Counsel For Plaintiff*