UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARITZA PRINCE, individually and on behalf of all persons similarly situated,

      Plaintiff,

-against-

JASON D. BOROFF & ASSOCIATES, PLLC; PROCESS SERVER PLUS INC.; ENRIQUE DIAZ; EMMANUEL LANZOT,

      Defendants.

No. 24 Civ. 2706 (GS)

**ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT AND CERTIFYING SETTLEMENT CLASS**

---

**GARY STEIN, United States Magistrate Judge:**

  This matter comes before the Court on the motion of Plaintiff Maritza Prince, on behalf of herself and putative Class Members, with the consent of Defendant Jason D. Boroff & Associates, PLLC ( the "Boroff Firm"), for final approval of the Stipulation of Settlement and Release as to All Claims Against Defendant Jason D. Boroff & Associates, PLLC ("Boroff Settlement") dated April 7, 2025, and related relief. The Court having granted preliminary approval of the Boroff Settlement (ECF No. 107), having considered the written submissions by Class Counsel in support of the motion for final approval (ECF Nos. 125–128, 130, 132), and having conducted a Fairness Hearing on December 11, 2025,

    **IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1. <u>Definitions</u>. For the purposes of this Order, the Court adopts by reference the definitions set forth in the "Definitions" sections of the Boroff Settlement and other definitions set forth in Plaintiff's memorandum of law in support of her motion for final approval (ECF No. 126).

2. <u>Certification of the Class</u>. The Court finds that the provisionally-certified class meets the requirements set forth in Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3), and hereby certifies

under both Fed. R. Civ. P. 23(b)(2) and 23(b)(3), for purposes of the proposed Settlement only, a class consisting of "all individuals sued by the Boroff Firm on behalf of a Lawsuit Landlord on or after April 10, 2021 in Bronx Housing Court in lawsuits in which the affidavit of service for the Eviction Petition has been filed stating that Diaz or Lanzot, on behalf of Process Server Plus, effectuated Conspicuous Service."

Specifically, the Court finds that the class is "so numerous that joinder of all members is impracticable," that "there are questions of law [and] fact common to the class," that "the claims . . . of the representative parties are typical of the claims . . . of the class," and that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Sykes v. Mel S. Harris & Assocs., LLC*, 285 F.R.D. 279, 286–87 (S.D.N.Y. 2012), *aff'd*, 780 F.3d 70 (2d Cir. 2015) (finding that plaintiffs had satisfied the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) in case with similar allegations of fraudulent service of process).

The requirements of Rule 23(a)(2) are satisfied because the actions of improper service about which Plaintiff complains "apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Sykes*, 285 F.R.D. at 293 (finding equitable relief appropriate under Rule 23(b)(2) where defendants were alleged to have uniformly filed "false affidavits in state court to fraudulently procure default judgments against the putative class members").

In addition, the requirements of Rule 23(a)(3) are satisfied because "questions of law [and] fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is

established because resolution of the key elements of Class Members' claims involves questions common to all Class Members, with potentially individualized determinations limited to issues of "causation and damages" that "do[] not preclude a finding of predominance." *See Sykes*, 285 F.R.D. at 293. Moreover, superiority is established because certifying the Class "presents economies of 'time, effort and expense, and promote[s] uniformity of decision,'" *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (quoting Fed. R. Civ. P. 23 advisory committee's note), and "the class members' interests in litigating separate actions is likely minimal given their potentially limited means with which to do so and the prospect of relatively small recovery in individual actions." *Sykes*, 285 F.R.D. at 294.

3. <u>Notice</u>: The Court finds that the distribution of notice to the Class (*i*) constituted the best practicable notice; (*ii*) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, the nature and terms of the proposed Settlement, the effect of the Settlement (including the effect of the releases), Class Members' right to object to the proposed Settlement, Class Members' right to exclude themselves from the Class, and the right of Class Members who submitted objections to appear at the Fairness Hearing; (*iii*) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (*iv*) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution, the Rules of this Court, and any other applicable law. The Parties filed with this Court adequate proof regarding the notice provided to Class Members to demonstrate that such notice was materially consistent with the Court's directives in the Preliminary Approval Order.

Specifically, the Class Administrator mailed the written Notice approved by the Court, as modified to implement the Court's suggestions, ECF Nos. 89-4, 89-5, 89-6, and 130-1, to all 1,601 unique households comprising 2,163 unique Class Members. The Class Administrator also sent reminder postcard notices to Class Members. In addition, the Class Administrator created a Settlement website, www.improperservicesettlement.com, which was made public prior to the distribution of Notices on October 6, 2025, as well as a toll-free hotline at 1-800-331-9006 and an email address (improperservicesettlement@atticusadmin.com) to facilitate communication with Class Members. Class Counsel also created a dedicated case page, https://nylag.org/prince-v-boroff-et-al, on its website.

In order to secure additional participation by Class Members, including Class Members who may have moved from the addresses to which notice was originally sent, the Class Administrator conducted skip tracing to obtain additional addresses, telephone numbers, and email addresses for Class Members, and then mailed notices and sent notices via text message and email to Class Members who had not yet filed Claims, as further described in the submissions on this motion. (ECF Nos. 128, 132). Further, Class Counsel made additional efforts to reach the approximately 165 Substantial Harm and Eviction Households who were most harmed by the conduct alleged, as described in the submissions on the motion. (*Id.*).

4. <u>Approval of Named Plaintiff and Appointment of Class Counsel</u>: For the purposes of the Settlement, the Court hereby confirms its approval of Maritza Prince as Class Representative and confirms its appointment of the New York Legal Assistance Group as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

5. <u>Approval of Class Administrator and Administration Expenses</u>: The Court confirms its approval of Atticus Administration, LLC to serve as the Class Administrator, and confirms its approval of the payment of up to $34,667 in Administration Expenses from the Class Settlement Account.

6. <u>Settlement Approval</u>: The Court approves the Boroff Settlement as fair, reasonable, and adequate, satisfying the requirements of Rule 23(e)(2), and finds that it is the result of arms-length negotiations between experienced attorneys familiar with the legal and factual issues of this case.  Specifically, the Court finds that:

    (a) The payment of a Gross Settlement Amount of a total of $212,500 is fair, reasonable, and adequate;

    (b) The non-monetary relief provided for in the Boroff Settlement, including that:

        i. The Boroff Firm will cease taking an Eviction Step against Non-Appearing Class Members;

        ii. The Boroff will permanently cease doing business with Defendants Process Server Plus, Diaz, and Lanzot; and

        iii. The Boroff Firm will change certain business practices;

    is fair, reasonable, and adequate;

    (c) The Allocation Plan submitted by Class Counsel provides for distribution of payments to the Class in a manner that is fair, reasonable, and adequate.

    The Court finds the Settlement to be fair, reasonable, and adequate after considering each of the factors set forth in Rule 23(e)(2) and the "largely overlap[ping]" *Grinell* factors, namely, "'(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery

completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.'" *Moses v. N.Y. Times Co.*, 79 F.4th 235, 244 n.2 (2d Cir. 2023) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)) (alteration in original).

       The Court finds that the Settlement is procedurally fair, given that the Class Representative and Class Counsel are adequate representatives of the Class, that the Settlement was the product of arm's length negotiations, and that, while the Settlement is occurring at a relatively early stage of the litigation, Class Counsel expended significant and sufficient efforts to investigate the underlying facts and obtain information from the Boroff Firm prior to agreeing to the Settlement.  Further, the Court finds the Settlement to be substantively fair given the size of the monetary award, the significant benefits flowing to Class Members from the injunctive relief provided under the Settlement, and the risks that class certification would be denied and that, even if certification were granted, the Class would be unable to establish liability, damages, and/or entitlement to injunctive relief.  As of the Fairness Hearing, no Class Member had objected to the Settlement and none had opted out of the Settlement.  This positive reaction of the Class to the Settlement "is perhaps the most significant factor to be weighed in considering [the Settlement's] adequacy," *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002), and supports approval here.

As of December 1, 2025, Class Counsel reported that approximately 8% of Class Members (on a household basis) had submitted valid claim forms. (ECF No. 126 at 12). Following additional efforts by the Class Administrator and Class Counsel, the participation rate had increased to approximately 9.2% as of the Fairness Hearing. (ECF No. 132 at 2). According to Class Counsel, this level of participation is, in Class Counsel's experience, relatively low. As a result, and as described further in Paragraph 7 below, Class Counsel intends to undertake further efforts to reach out to Class Members over the next 90 days in the hopes of prompting greater participation, particularly from Eviction Households and Substantial Harm Households. While perhaps lower than one would hope, the current level of participation is not inordinately low, nor does it militate against approval of the Settlement, particularly in light of the absence of any objections or opt-outs to the Settlement. *See, e.g.*, *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 290 (6th Cir. 2016) (noting that expert who had administered 3,000 consumer class action settlements had testified that "response rates in class actions generally range from 1 to 12 percent, with a median response rate of 5 to 8 percent"); Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns, *FTC Staff Report* (Sept. 2019) at 11, 21 (FTC study finding that the median claims rate in consumer class action settlements was 9%).

The fees and expenses sought by Class Counsel are reasonable in relation to the monetary and non-monetary benefits to be realized by the Class. Further, Plaintiff has proposed, and the Court has appointed, an experienced Claims Administrator to process claims, provide claimants an opportunity to cure any deficiencies, and distribute to claimants their pro rata share of the settlement fund, consistent with established procedures.

Finally, the Court finds that the Allocation Plan treats Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D). The graduated levels of recovery provided to Eviction Households, Substantial Harm Households, and Procedural Harm Households, respectively, reasonably and properly account for the different degrees of harm suffered by Class Members. Further, Class Counsel, who prepared the Allocation Plan, has experience in prosecuting and settling similar class action suits involving allegations of improper service of process, such as *Burks v. Gotham Process, Inc.*, No. 20 Civ. 1001 (NRM) (PK) (E.D.N.Y.). *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.") (cleaned up).

7. <u>Acceptance of Claims following Claim Submission Deadline</u>: The Court authorizes Class Counsel and the Class Administrator to accept otherwise valid late-submitted claims up to any date that is not later than 90 days after entry of this Order. Based on their experience and efforts in recent weeks, Class Counsel states that they believe further attempts to provide notice and to reach out to Class Members over the next 90 days may substantially increase the number of claims, particularly from Eviction Households and Substantial Harm Households, who have been impacted most significantly by the alleged conduct. Class Counsel described its anticipated efforts over this 90-day period and the reasons why they believe those efforts will bear fruit. While allowing additional claims to be submitted may delay the distribution of payments from the settlement fund to Class Members who submitted timely Claims, the Court finds that it is in the interests of the Class as a whole and that there is good cause for authorizing Class Counsel and the Class Administrator to engage in these outreach efforts and to allow Class Members who may not have previously received notice,

or who may not have properly understood any notice previously received, to continue to submit Claims.

8. <u>Distribution from Class Settlement Account</u>: The Court directs the Class Administrator to distribute the Settlement Amount from the Class Settlement Account in a manner consistent with the Allocation Plan and this Order.

9. <u>Distribution of Funds to Class Members</u>: The Class Administrator is directed to distribute funds to Class Members pursuant to the Allocation Plan, as follows:

    (a) The Class Administrator is directed to make reasonable and diligent efforts to have Class Members cash their distribution checks or otherwise accept their payments from the Class Administrator.

    (b) Consistent with the Boroff Settlement, to the extent that funds remain in the Class Settlement Account after the initial distribution to eligible Class Members, the Class Administrator and Class Counsel shall together determine whether to make a further distribution (or distributions) consistent with the Allocation Plan, after considering whether such distribution is practical and feasible in light of the funds that remain in the Class Settlement Account and the estimated costs of any such distribution.

    (c) Consistent with the Boroff Settlement, if further distribution(s) is (are) not feasible, the remainder shall, subject to Court approval, be given as a *cy pres* award to one or more not-for-profit organizations approved by the Court that benefits individuals adversely affected by consumer debt collection practices. Under no circumstances will any funds in the Class Settlement Account revert to Defendant. Class Counsel shall provide notice to the Court by letter filed on ECF when all distributions under

the Settlement are complete and, at that time, seek approval of any proposed *cy pres* recipient.

(d) Consistent with Paragraph 7 above, Class Counsel is authorized, in their discretion, to direct the Class Administrator to accept otherwise valid Claims by Class Members submitted after the Claim Submission Deadline up to 90 days from entry of this Order. To the extent additional Claims are filed after that point, Class Counsel is authorized to provide as part of any additional distribution described in subsection (b) of this paragraph a payment to any such claimants up to the amount that the claimant would have received if the Claim had been timely made, funds permitting. If there are not adequate funds to pay such claimants the full amount they would have received had their Claims been timely made, then those claimants shall all receive a pro rata share of the payment they would have received had their Claims been timely made.

10. <u>Attorneys' Fees and Costs Award</u>: Class Counsel are hereby awarded Approved Attorneys' Fees and Costs in the amount of $70,833, to be paid out of the Class Settlement Account. The Court finds that the Approved Attorneys' Fees are fair and reasonable.

The Court has approved this award in light of the *Goldberger* factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 423 (2d Cir. 2010) (citing *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). Class Counsel's requested fee award of $70,833 amounts to 33% of the $212,500 settlement fund, which is in line with fee awards in this Circuit. *See, e.g.*, *In re Facebook,*

*Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *11 (S.D.N.Y. Nov. 9, 2015) ("A fee award of one-third of the Settlement Fund 'is well within the range accepted by courts in this circuit.'" (quoting *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y.1999), and collecting cases)), *aff'd*, 674 F. App'x 37 (2d Cir. 2016). Class Counsel's requested fee award is all the more reasonable considering that the injunctive relief under the Settlement provides additional non-monetary benefits to the Class which, while not readily quantifiable, have substantial value. The Court finds that each of the *Goldberger* factors supports the requested fee award. So too does the reaction of the Class to the Settlement: As noted, no Class Member has objected to the Settlement or the fee award. *See In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 Civ. 8557 (CM), 2014 WL 7323417, at *18 (S.D.N.Y. Dec. 19, 2014) ("In addition to the criteria set forth in *Goldberger*, courts in the Second Circuit consider the reaction of the Class to the fee request in deciding how large a fee to award.").

A lodestar cross-check confirms the reasonableness of the requested fee award. Class Counsel's hourly rates range from $675 for an attorney with 19 years of experience, $480-$500 for those with 9–10 years of experience, $295 for those with 2 years of experience, and $125 for a paralegal. This is in line with the hourly rates of other similarly situated attorneys approved in this Circuit. *See, e.g.*, *Homeaway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 597 (S.D.N.Y. 2021) (noting that rates for experienced civil rights attorneys "appear to cluster in the $350-450 per hour range") (citation omitted); *Torres v. City of New York*, No. 18 Civ. 03644 (LGS) (KHP), 2020 WL 6561599, at *5 (S.D.N.Y. June 3, 2020) (approving rates ranging from $250 to $600 per hour); *Cruz v. Zucker*, No. 14 Civ. 4456 (JSR), 2017 WL 1093285, at *3 (S.D.N.Y. Mar. 10, 2017) (noting that average award of approximately

$400 per hour to non-profit legal organization "appear[ed] to be somewhat below market"). Moreover, the lodestar multiplier, as calculated by Plaintiff's counsel for work done relating to Plaintiff's claims against the Boroff Firm and excluding time expended in preparing this motion for final approval, is negative, as the total lodestar is over $100,000. A negative multiplier strongly suggests that the requested fee amount is reasonable. *See, e.g.*, *Gruber v. Gilbertson*, 647 F. Supp. 3d 100, 128 (S.D.N.Y. 2022) (negative multiplier "demonstrates that a fee award in the amount plaintiffs' counsel requests would not constitute anything approaching a windfall"); *Guevoura Fund Ltd. v. Sillerman*, No. 15 Civ. 7192 (CM), 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) (negative multiplier "militates very in favor of the reasonableness of the fee request").

11. <u>Service Awards</u>: The Court finds that the requested Service Award of $5,000 to be paid to Ms. Prince is reasonable under the circumstances. This amount is consistent with (if at the higher end of) the range of awards made in similar cases in this Circuit. *See, e.g.*, *O'Connor v. AR Res., Inc.*, No. 08 Civ. 1703, 2012 WL 12743, at *9 (D. Conn. Jan. 4, 2012) ($2,000 service award); *Garland v. Cohen & Krassner*, No. 08 Civ. 4626, 2011 WL 6010211, at *14 (E.D.N.Y. Nov. 29, 2011) ($3,000 service award); *Gross v. Washington Mut. Bank, F.A.*, No. 02 CV 4135, 2006 WL 318814, at *6 (E.D.N.Y. Feb. 9, 2006) ($5,000 service award). This amount shall be paid out of the Class Settlement Account.

12. <u>Jurisdiction</u>: The Court has jurisdiction over the subject matter of the Action, the Named Plaintiff, Class Members, and Defendant Boroff, and has jurisdiction to enter this Order. The Court expressly retains exclusive and continuing jurisdiction over the Boroff Settlement, the Settling Parties, Class Members, and anyone else who appears before this Court for all matters relating to the Boroff Settlement, including the enforcement of this Order.

13. <u>Dismissal of Claims Against the Boroff Firm</u>: Upon entry of this Order, all claims against the Boroff Firm are dismissed with prejudice according to the terms of the Boroff Settlement, without fees or costs to any party except as provided in this Order.

14. <u>Releases</u>: The release of claims set forth in the Boroff Settlement is expressly incorporated in this Order in all respects.

15. <u>Binding Effect</u>: The Boroff Settlement and this Order shall forever be binding on the released parties and releasing parties covered by the Boroff Settlement. This Order shall have *res judicata*, collateral estoppel and other preclusive effect in all pending and future lawsuits, actions or other proceedings brought by Class Members that arise out of released claims covered by the Boroff Settlement.

16. <u>Notice Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA Notice")</u>: The Court finds that, pursuant to 28 U.S.C. § 1715(b), on September 11, 2025, Defendant Boroff served CAFA Notices on all appropriate government officials. Thus, the Court finds that the requirements of 28 U.S.C. § 1715 are satisfied.

17. <u>Bar Order</u>: Upon entry of this Order, the Bar Order entered by the Court at ECF No. 106 shall become effective according to its terms.

    **SO ORDERED.**

Dated: December 16, 2025
        New York, New York

_____
**GARY STEIN**
**UNITED STATES MAGISTRATE JUDGE**