UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MARITZA PRINCE; individually and on
behalf of all persons similarly situated,

                            Plaintiff,

                    -against-                                    **24 Civ. 2706 (GS)**

JASON D. BOROFF & ASSOCIATES,                      **OPINION & ORDER**
PLLC; PROCESS SERVER PLUS
INC.; ENRIQUE DIAZ; EMMANUEL
LANZOT,

                            Defendants.
------------------------------------------------------------------------X
**GARY STEIN, United States Magistrate Judge:**

On February 27, 2026, Plaintiff moved for sanctions pursuant to Fed. R. Civ.

P. 37, seeking attorneys' fees for the failure of Defendant Process Server Plus Inc.

("PSP") to produce certain documents as required by a court order.  (Dkt. No. 152

("Pl. Mot.")).  PSP filed a response on March 9, 2026.  (Dkt. No. 155 ("Def. Opp.")).

On April 17, 2026, the Court held a hearing on this issue, among others.  (*See*

Minute Entry at April 17, 2026; Dkt. No. 164, Transcript of April 17, 2026 Hearing

("Tr.")[1]).  For the following reasons, Plaintiff's motion for sanctions is **DENIED**.

## BACKGROUND

Plaintiff's motion arises out of an Order Compelling Production issued by the

Court on February 4, 2026.  (Dkt. No 146 (the "Order")).  That Order, which was

jointly requested by the parties, relates to GPS records for Defendants Enrique Diaz

---

[1] The Transcript is currently under seal to allow the parties time to request changes.

("Diaz") and Emmanuel Lanzot ("Lanzot"), two process servers employed by PSP. (Dkt. No. 142).  New York City law requires licensed process servers to operate electronic devices recording their GPS location, time, and date while serving process.  *See* N.Y.C. Admin. Code § 20-410.  During 2025, PSP produced to Plaintiff a copy of the GPS records for Diaz and Lanzot in a format unique to its custom data storage program; upon further request from Plaintiff, based on Plaintiff's concern that this data format was alterable, PSP provided the GPS records in a "native," but uncertified, format.  (Def. Opp. at 3–4).

Subsequently, after learning that the GPS records produced by PSP came from PSP's own data system, Plaintiff demanded that PSP produce certified copies of the GPS records maintained by PSP's "GPS contractor."  (Pl. Mot. at 1). Pursuant to New York City regulations, the original GPS records must be transmitted to and kept by a third-party contractor retained by the process serving business.  *See* 6 R.C.N.Y. § 2-233b(a)(4)(i) (providing that "[t]he electronic record must be automatically transmitted electronically from the mobile device to the GPS Contractor as soon as a GPS or cellular signal is available and location, date and time are entered into the electronic record," and that "the original data file must be maintained by the GPS Contractor unaltered for a period of not less than seven years"); *see also 600 W. 218th St. Assocs. LLC v. Proano*, 84 Misc. 3d 1025, 1031, 218 N.Y.S.3d 764, 769 (Civ. Ct. N.Y. Cnty. 2024) (noting that the regulations "require that the GPS records must be maintained by an independent third party, and not by the process server").  PSP's third-party GPS contractor is Branko Rakamaric

2

("Rakamaric"), who also serves as the "computer IT person" for PSP.  (Def. Opp. at 1).

Under the relevant regulations, the GPS contractor "must produce upon request by the process server or the Department [of Consumer and Worker Protection], and to any other party according to an appropriate order or subpoena, a copy of the electronic records, or any reasonably described part involved, certified by the GPS Contractor to be true and accurate."  6 R.C.N.Y. § 2-233b(a)(4)(v).  Rakamaric, when contacted by PSP about Plaintiff's request, stated that he would only provide the records pursuant to a court order.  (Def. Opp. at 4).  This led to Plaintiff's and PSP's joint request,[2] and to the Order issued by the Court pursuant to that request on February 4, 2026.  The Order provides, in relevant part:

> Within seven (7) days of this Order, PSP is directed to produce certified copies of all GPS records for Defendants Lanzot and Diaz from the period January 5, 2021 to April 18, 2024, which PSP is expressly directed to obtain from its third-party GPS contractor.

Order at 1.

PSP failed to procure the certified records from Rakamaric and therefore failed to produce them by the Order's deadline, which was February 11, 2026.  Plaintiff then filed the instant motion for sanctions, contending that PSP's failure to produce the certified records constitutes a willful violation of this Court's Order, as "there is no reason beyond PSP's control for noncompliance."  (Pl. Mot. at 2).  Plaintiff seeks sanctions in the form of attorneys' fees pursuant to Fed. R. Civ. P.

---

[2] Plaintiff disagreed that a court order was required, but agreed to the proposed order for expediency's sake.  (Dkt. No. 142).

37(b)(2). Specifically, Plaintiff seeks attorneys' fees "for all work expended on obtaining the certified GPS records since June 4, 2025, the deadline for PSP's initial objections and responses, up until the date of PSP's production of the GPS records." (*Id.*).

In its response, PSP counters that it "cannot comply with this order because [it] does not have possession, control or custody of the certified GPS logs, they are in the possession, control and custody of" Rakamaric. (Def. Opp. at 4). PSP contends that it tried to retrieve the records from Rakamaric, and should not be subject to sanctions, as "PSP cannot produce something it is not in possession of" when Rakamaric "is beyond PSP's control." (*Id.* at 5–6). PSP's written response described its efforts to obtain the certified GPS records from Rakamaric in fairly general terms. But at the April 17, 2026 hearing, both PSP's counsel of record, Daniel Tanon ("Tanon"), and PSP's President, Thomas Dundas ("Dundas"), elaborated on those efforts in considerable detail, as summarized below.

As of the April 17 hearing (and, so far as the Court is aware, as of today), PSP still had not obtained the certified GPS records from Rakamaric and, consequently, still had not produced them to Plaintiff. (*See* Tr. at 54:2–6).

## LEGAL STANDARDS

"Failure to obey a court order to produce documents pursuant to Rule 34 can result in [ ] sanctions . . . under Rule 37(b)(2)." *Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*, 248 F.R.D. 126, 156 (S.D.N.Y. 2007); *see* Fed. R. Civ. P. 37(b)(2)(A) (authorizing sanctions against a party who "fails to obey an order to provide or

4

permit discovery"). Such sanctions can include, *inter alia*, "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," or "striking pleadings in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(i), (A)(iii). "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

"[D]istrict courts possess wide discretion in imposing sanctions under Rule 37." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007) (quotation and citation omitted). "Numerous factors are relevant to the exercise of this discretion, 'including (1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance[;] and (5) whether the non-compliant party had been warned of the consequences of [ ] noncompliance.'" *Abouelmakarem v. MDNMA Inc.*, No. 21 Civ. 10625 (LJL), 2023 WL 3559392, at *6 (S.D.N.Y. May 18, 2023) (quoting *Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 208 (S.D.N.Y. 2002)). "'[A]n award of sanctions under Rule 37 should effectuate its three purposes: (1) ensuring the disobedient party does not benefit from non-compliance; (2) obtaining compliance with discovery orders; and (3) providing a general deterrent in the particular case and litigation in general.'" *Id.* (quoting *Handwerker*, 211 F.R.D. at 208).

Where, as here, the court order in question requires a party to obtain and produce documents held by a third party, courts examine whether the documents are within the party's "control" within the meaning of Federal Rule of Civil Procedure 34 and whether the party engaged in good faith and reasonable efforts to obtain the documents from the third party.  *See Mirlis v. Greer*, 80 F.4th 377, 382 (2d Cir. 2023); *Shcherbakovskiy*, 490 F.3d at 138–40; *In re Application of Potanina*, No. 14 Misc. 31 (LAP), No. 14 Misc. 57 (LAP), 2015 WL 4476612, at *1–3 (S.D.N.Y. June 30, 2015); *M'Baye v. New Jersey Sports Prod., Inc.*, No. 05 Civ. 9581 (DC), 06 Civ. 3439 (DC), 2008 WL 1849777, at *3–4 (S.D.N.Y. Apr. 21, 2008).  "[A] party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain."  *Shcherbakovskiy*, 490 F.3d at 138.

Rule 34 requires parties to produce documents and electronically stored information ("ESI") within their "possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  "Evidence in a party's 'control' has been interpreted to mean evidence that the party has the legal right, authority, or practical ability to obtain by virtue of its relationship with the party in possession of the evidence."  *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 24 (S.D.N.Y. 2010) (collecting cases), *aff'd*, 271 F.R.D. 55 (S.D.N.Y. 2010).  Thus, "[a] party may be ordered to produce documents where that party has the legal right to obtain the documents, even though that party retains no copy, and regardless of whether the documents are beyond the jurisdiction of the court."  *M.L.C., Inc. v. N. Am. Philips Corp.*, 109 F.R.D. 134, 136 (S.D.N.Y. 1986); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006) ("'If

the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have "control," even if the documents are actually in the possession of a non-party.'" (quoting *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994))).

## DISCUSSION

Here, the parties agree that the certified GPS records are within the possession and custody of Rakamaric, not PSP.  They disagree, however, as to whether the records are within PSP's "control."  Plainly, PSP has a legal right to require Rakamaric to provide it with certified copies of the GPS records.  Under the Rules of the City of New York, Rakamaric "*must produce upon request by the process server* . . . a copy of the electronic records, or any reasonably described part involved, certified by [himself] to be true and accurate."  6 R.C.N.Y. § 2-233b(a)(4)(v).[3]

However, as the Court explained at the outset of the April 17 hearing, the bare legal right to obtain documents in the possession of a third party does not, in and of itself, mean that those documents are within a party's "control."  (*See* Tr. at 54:8–58:20).  As Judge Preska has explained: "While the [control] test frequently is stated [in] such a way that it might be interpreted as disjunctive ('legal entitlement or practical ability'), it cannot be the case that legal entitlement alone is sufficient to find control where the subpoenaed party makes a showing that it lacks the practical ability to obtain access to documents." *In re Application of Potanina*, 2015

---

[3] Further, even assuming *arguendo* that, under 6 R.C.N.Y. § 2-233b(a)(4)(v), Rakamaric was correct to insist on a court order because he knew that the records were ultimately to be provided by PSP to another party, the Court issued such an order, removing any such obstacle to Rakamaric's complying with his obligation under the Rule to provide the records to PSP.

WL 4476612, at *1.  Thus, where a party has acted diligently and engaged in reasonable and good faith efforts to obtain the documents in question from the third party, but has been unable to do so, that indicates that "control" is lacking, regardless of whether the party is legally entitled to the documents.  *Id.* at *2–3; *M'Baye*, 2008 WL 1849777, at *4.

Examining the record as a whole, including the representations made at the April 17 hearing, the Court finds that, even though PSP has a legal right to obtain the certified GPS records from Rakamaric under 6 R.C.N.Y. § 2-233b(a)(4)(v), it does not have the practical ability to do so, and thus does not have "control" over the documents within the meaning of Rule 34.

It is true that Rakamaric not only is PSP's GPS contractor, but also serves as its general "IT person."  (Def. Opp. at 1; Tr. at 27:22–28:7).  Were Rakamaric a full-time employee, working solely for PSP, that would strongly suggest that he, and by extension the GPS records, are in PSP's control.  *See Herbst v. Able*, 63 F.R.D. 135, 138 (S.D.N.Y. 1972) (since defendant Douglas Aircraft's employees are "plainly" within its control, Douglas must "have its non-defendant employees procure copies of their private testimony before the SEC so that Douglas may give same to plaintiffs"); *Riddell Sports Inc.*, 158 F.R.D. at 559 (audio tapes created and held by officer "are within Riddell's control and must be disclosed in response to a proper notice for production"); *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 448 (S.D.N.Y. 2011) (noting that "[c]ourts have repeatedly found that employers have control over

their employees and can be required to produce documents in their employees' possession"). But that is not the case.

Rather, Dundas's statements at the hearing show that Rakamaric acted only as a part-time contractor, with limited responsibilities and for modest compensation. Dundas affirmed that Rakamaric is not, and has never been, a PSP employee, and has no office within PSP's building. (Tr. at 64:11–20). Dundas further explained that Rakamaric's IT work is sporadic and performed on an as-needed basis, with PSP paying Rakamaric at an hourly rate. (*Id.* at 63:24–64:2). Those payments occur irregularly, with PSP sometimes going months or years without requiring Rakamaric's IT services. (*Id.* at 64:21–65:5). Moreover, there has never been a contract for these services. (*Id.* at 63:16–23).

Rakamaric's role as the GPS contractor is similarly limited. Rakamaric was already acting as PSP's IT person when PSP asked him to serve as its GPS records coordinator. (*Id.* at 59:6–21). Although Rakamaric was paid regularly for his specific services as GPS contractor, he was only paid $100 per month. (*Id.* at 61:21–62:16).[4] Rakamaric had no written contract regarding these services, nor did his position otherwise change as a result of this added responsibility. (*Id.* at 59:6–14; 64:11–20).

These facts suggest that, despite its legal right to obtain the certified GPS records from Rakamaric, PSP had little leverage over Rakamaric if he refused to

---

[4] The $100 monthly fee is corroborated by Rakamaric's invoices to PSP, some of which were submitted on a related motion by Plaintiff to compel certain discovery responses. (Dkt. No. 153 Ex. C at 1, 3, 4).

provide them (as proved to be the case). And indeed, when Dundas contacted Rakamaric to urge him to provide the GPS records pursuant to the Order, Rakamaric complained about the burdens this litigation has already imposed on him,[5] and told Dundas, "if this continues, I don't want to do business" with PSP anymore "because this is my side business, it's not my primary business." (*Id.* at 73:17–74:8).

The record also reflects that PSP made various efforts, through both Tanon and Dundas, to retrieve the relevant records from Rakamaric. First, Tanon represented that on February 8, 2026, four days after the Court issued the Order and after prior unsuccessful discussions about turning over the certified records, he went to Rakamaric's home and left a copy of the Order in Rakamaric's mailbox. (Tr. at 70:19–71:9). Within the next two days, Tanon called Rakamaric and left a voicemail about the order. (*Id.* at 72:1–6). The following weekend, on February 15, Tanon returned to Rakamaric's home to find that the order was now gone from the mailbox. (*Id.* at 71:11–19).

These efforts did not bear fruit, and two days later, on February 17, Plaintiff's counsel spoke with Tanon about PSP's failure to comply with the Order. (Pl. Mot. at 2; Def. Opp. at 4). Later that day, Tanon mailed and emailed a letter to Rakamaric urging him to provide the records. (Tr. at 68:21–24). Tanon's letter

---

[5] In October 2025, Plaintiff served Rakamaric with a non-party subpoena pursuant to Rule 45 seeking information related to a custom data system Rakamaric built for PSP and electronic communications between Rakamaric and PSP. (Dkt. No. 134 Ex. F). After Rakamaric did not respond, this Court, at Plaintiff's request, issued an order requiring Rakamaric to comply with the subpoena (Dkt. No. 144), which he eventually did (Dkt. No. 147).

attached a copy of the Order and stated that "[t]his is a court order and must be abided by"; reminded Rakamaric that only he, as the custodian, could produce the certified GPS records; and added: "I cannot stress how important it is that these certified records [ ] be produced." (Def. Opp. Ex. 1).  Tanon placed another phone call to Rakamaric, and left another voicemail, towards the end of that week.  (Tr. at 72:8–10).[6]  Despite these efforts, Rakamaric never responded to Tanon's February 17 email and letter and never contacted Tanon.  (*See id.* at 86:20–22).

Dundas represented that he also personally made efforts to retrieve the relevant records from Rakamaric.  First, Dundas called Rakamaric as soon as he was informed about the Court's order, asking Rakamaric to provide the certified records.  (Tr. at 73:17–24).  Shortly thereafter, Dundas spoke with Rakamaric two other times, "trying to convince him to . . . send the documents."  (*Id.* at 74:11–16).  In response, Rakamaric incorrectly assured Dundas that he had already done so.  (*Id.* at 74:17–22).  After further communication, Rakamaric committed to providing the records to Plaintiff's counsel directly via email, with the Court copied, but would not copy Dundas or Tanon on the response.  (*Id.* at 77:22–78:11).  As noted above, however, that never occurred.

Moreover, Tanon and Dundas represented that Dundas threatened to stop paying Rakamaric's invoices, and in fact did do so, based on Rakamaric's non-responsiveness to the Order.  (*Id.* at 83:14–85:6).  Despite the non-payment,

---

[6] Tanon also attempted to reach Rakamaric by calling a former client, who is Rakamaric's brother-in-law.  However, the number Tanon had for the brother-in-law was disconnected.  (*Id.* at 85:17–23).

Rakamaric apparently continues to send PSP monthly $100 invoices for his services as the GPS contractor, which PSP no longer pays, and PSP has not utilized Rakamaric's IT services since the start of this year. (*Id.* at 85:7–12). Indeed, Dundas has begun the process of officially switching his GPS contractor away from Rakamaric to a different third party, specifically because of these events. (*Id.* at 62:17–63:14). Yet none of PSP's requests, imprecations, and threats have succeeded in inducing Rakamaric to provide the relevant records.

Based on these facts, PSP has shown that it lacks the practical ability to obtain the certified records through Rakamaric. *See In re Application of Potanina,* 2015 WL 4476612, at *2–3 (finding no control and denying request for sanctions, despite movant's claim that the party subject to the court order was "legally entitled to obtain the records," because the party had made reasonable efforts to obtain the documents from the third party, without success, making it "apparent that [he] does not have the practical ability" to obtain the records"); *M'Baye,* 2008 WL 1849777, at *4 (finding no control and denying sanctions where third party in possession of records "was being very difficult" and would not turn over sought-after materials despite plaintiff's diligent efforts, which included hiring separate counsel to send a demand letter to possessing party). As a result, the Court finds that the certified GPS records that PSP was obligated to produce pursuant to the Order are not documents or ESI in PSP's "control" within the meaning of Rule 34(a)(1). Even though PSP may have the legal right to obtain the records from Rakamaric, its "inability to obtain [the] documents from [Rakamaric]" after making reasonable

efforts to do so shows that it does not, in fact, "have control over them." *M'Baye*, 2008 WL 1849777, at *4.[7]

Accordingly, Plaintiff's motion for sanctions must be denied.

However, this does not mean that Plaintiff's quest to obtain certified GPS records must remain unrequited. Plaintiff has already successfully subpoenaed Rakamaric once and he, despite his current intransigence, would be legally obligated to respond to another subpoena and/or order. (*See* Dkt. No. 144). Assuming Plaintiff still wishes to obtain the certified GPS records, she may issue another subpoena to Rakamaric. *See M'Baye*, 2008 WL 1849777, at *4 ("[I]f defendants really believe these documents are so important, they may themselves seek to compel [the third-party] to produce them."). If Plaintiff wants the subpoena to have the effect of a court order (in light of Rakamaric's prior insistence on a court order for these records), she may propose an appropriate form of order to the Court.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for sanctions is **DENIED**. The Clerk of Court is respectfully directed to close the pending motion at Dkt. No. 152.

**SO ORDERED.**

---

[7] Given the clarity of 6 R.C.N.Y. § 2-233b(a)(4)(v), it seems likely that PSP would be able to enforce its legal right to the records if it sued Rakamaric to obtain them. In construing "control" for purposes of Rule 34, however, courts generally have not gone so far as to require a party to take legal action against the third party in possession of the documents. *See In re Application of Potanina*, 2015 WL 4476612, at *3 (finding that, although "Mr. Aliev could opt to pursue legal action" against the possessing party, "the Court cannot mandate it" given, *inter alia*, that "[s]uch an order would place an undue burden on Aliev"); *M'Baye*, 2008 WL 1849777, at *4 ("It was not my intent . . . to order M'Baye to sue Roos in Switzerland to obtain the documents.").

DATED:      New York, New York
            May 8, 2026

                                                    _____
                                                    The Honorable Gary Stein
                                                    United States Magistrate Judge

14